# Exhibit E



COMPETITION APPEAL TRIBUNAL

**SUMMARY OF APPLICATION UNDER SECTION 120 OF THE ENTERPRISE ACT 2002**

**CASE No. 1590/4/12/23**

Pursuant to rules 14 and 26 of the Competition Appeal Tribunal Rules 2015 (S.I. 2015 No. 1648) (the "Rules"), the Registrar gives notice of the receipt on 24 May 2023 of an application for review (the "Application") under section 120 of the Enterprise Act 2002 (the "Act") by Microsoft Corporation ("Microsoft" / the "Applicant") of the decisions of the Competition and Markets Authority (the "Respondent"), which are contained in a report dated 26 April 2023, in relation to the anticipated merger between the Applicant and Activision Blizzard Inc. ("Activision") (the "Decision"). The Applicant is represented by Weil, Gotshal & Manges (London) LLP of 110 Fetter Lane, London, EC4A 1AY (Reference: Jenine Hulsmann, Jamie Maples, Nafees Saeed and Chris Chapman).

The Applicant is a global technology company headquartered in Redmond, Washington, USA. It has activities across a range of sectors, including in the video gaming industry, where it is present through the Xbox gaming business.

On 18 January 2022, the Applicant signed and announced its proposed acquisition of Activision for $68.7 billion (the "Merger"). Activision is headquartered in Santa Monica, California, USA. Activision's activities are exclusively dedicated to gaming, as a developer and publisher of PC, console and mobile games. Amongst Activision's principal titles are *Call of Duty, Candy Crush*, and *World of Warcraft*.

The Respondent commenced its Phase 1 investigation of the Merger on 6 July 2022 and referred the Merger for a Phase 2 investigation on 15 September 2022. The Respondent issued its provisional findings and a notice of possible remedies on 8 February 2023. On 24 March 2023, the Respondent issued an addendum to its provisional findings which, according to the Applicant, reversed its position on one of the two theories of harm it was considering, relating to console gaming services. After this date, the Respondent's investigation focused on its remaining theory of harm, relating to cloud gaming services.

The Respondent concluded in the Decision that the Merger would be likely to give rise to a substantial lessening of competition ("SLC") within a market for cloud gaming services in the UK, due to vertical effects arising from input foreclosure of Activision's gaming content. The Respondent decided that prohibition of the Merger would be the only effective and proportionate remedy to address this SLC. The Respondent further decided that an alternative remedy proposed by the Applicant (the "Microsoft Cloud Remedy") would not effectively remedy the SLC.

In summary, the Applicant challenges these decisions on the following grounds:

1) **Ground 1**: The Respondent made fundamental errors in its assessment of the Applicant's current position in cloud gaming services by failing to take account of constraints from native gaming (whereby gamers access games installed on their devices through a digital download or physical disc), undermining its SLC finding:

   a) In its market definition analysis, the Respondent failed to consider potential switching to native gaming, resulting in a flawed conclusion that cloud gaming services fall in a separate product market.

   b) Even on the Respondent's erroneous, narrow, market definition, the Respondent failed to take into account relevant out-of-market constraints from native gaming in its competitive assessment of vertical foreclosure effects.

c) The Respondent made fundamental errors in its calculation and assessment of market share data for cloud gaming services and as a result failed to take into account relevant considerations in its competitive assessment.

2) **Ground 2**: The Respondent erred in failing to take proper account of three long-term commercial agreements which the Applicant had entered into with cloud gaming providers for the licensing of rights to stream its games, including Activision's gaming content, post-Merger (the "Agreements") in its assessment.

3) **Ground 3**: The Respondent's finding that Activision would have been likely to make its gaming content available on cloud gaming services absent the Merger was irrational and arrived at in a procedurally unfair manner.

4) **Ground 4**: The Respondent's findings that the Applicant would have the ability and incentive to foreclose rival cloud gaming services by withholding access to Activision's gaming content post-Merger was unlawful. In particular, the Respondent's analysis was affected by four errors, each of which in isolation, separately, and/or cumulatively, renders the findings on ability and incentive unlawful, irrational and/or disproportionate.

   a) The Respondent wrongly relied on evidence that so-called 'AAA' games would be important for cloud gaming services to find that Activision games *in particular* would hold such importance.

   b) The Respondent failed to take account of relevant evidence regarding immediate losses from hypothetical foreclosure, which showed that the Applicant would not have an incentive to withhold access to Activision games from cloud gaming rivals.

   c) As set out in Ground 1 and Ground 2, the Respondent wrongly failed to take account of (i) relevant out-of-market constraints and (ii) the Agreements.

5) **Ground 5**: In assessing remedial action for the SLC, the Respondent:

   a) Erred in law by proceeding on the basis that it had a duty to impose what it described as a comprehensive remedy, thus failing to consider a range of remedies and assess their benefits and detriments in the round;

   b) Unlawfully failed to take account of the interests of comity;

   c) Erred in rejecting the Microsoft Cloud Remedy, which rejection was in all the circumstances disproportionate; and

   d) Acted in breach of the Respondent's common law duty of fairness and the CMA's own remedies guidance.

The Applicant seeks the following relief from the Tribunal:

1. An order pursuant to section 120(5)(a) of the Act quashing the Decision in its entirety;

2. An order that the Respondent pays the Applicant's costs of this Application;

3. Such further or other relief as the Tribunal deems fit.

Any person who considers that he has a sufficient interest in the outcome of the proceedings may make a request for permission to intervene in the proceedings, in accordance with rule 16 of the Rules.

Please note that: (i) a direction of the President is currently in place as to the electronic filing of documents (see paragraph 2 of the Practice Direction relating to Covid-19 published on 20 March 2020); and (ii) any request for permission to intervene should be sent to the Registrar electronically, by email to registry@catribunal.org.uk, so that it is received within three weeks of the publication of this notice.

Further details concerning the procedures of the Competition Appeal Tribunal can be found on its website at www.catribunal.org.uk. Alternatively, the Tribunal Registry can be contacted by telephone (020 7979 7979) or email (registry@catribunal.org.uk). Please quote the case number mentioned above in all communications.

*Charles Dhanowa OBE, KC (Hon)*
Registrar

Published 26 May 2023