Beth Wilkinson (*pro hac vice*)
Rakesh Kilaru (*pro hac vice*)
Kieran Gostin (*pro hac vice*)
Grace Hill (*pro hac vice*)
Anastasia Pastan (*pro hac vice*)
Sarah Neuman (*pro hac vice*)
WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
kgostin@wilkinsonstekloff.com
ghill@wilkinsonstekloff.com
apastan@wilkinsonstekloff.com
sneuman@wilkinsonstekloff.com

Bambo Obaro (Bar No. 267683)
Weil, Gotshal and Manges
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3083
Facsimile: (650) 802-3100
bambo.obaro@weil.com

*Counsel for Defendant Microsoft Corp.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br><br>Plaintiff,<br><br>v.<br><br>**MICROSOFT CORP., et al.,**<br><br>Defendants. | Case No. 3:23-cv-02880-JSC<br><br>**JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**<br><br>The Honorable Jacqueline Scott Corley |

The parties have been negotiating over a protective order and have reached agreement on many issues. But one issue remains: The FTC will not agree to allow any in-house litigation counsel at Microsoft and Activision Blizzard access to Confidential trial exhibits. Defendants' proposal—based on a protective order the FTC consented to in a recent § 13(b) matter in this District—is to permit a small number of in-house counsel who have no role in competitive decision-making and who are responsible for managing this litigation to view Confidential exhibits. *See* Ex. A ¶ 8. Microsoft and Activision have identified three and two such individuals respectively, each of whom has submitted a declaration attesting to their work responsibilities and their non-involvement in competitive decisions. The Court should reject the FTC's needlessly restrictive proposal.

## PROCEDURAL HISTORY

Shortly after the complaint was filed on June 12, Defendants raised the need for a protective order with the FTC. In the interest of moving expeditiously, Defendants sent the FTC a proposed protective order based on one the FTC agreed to in a 2022 § 13(b) proceeding in this District. Two days later, the FTC responded that it disagreed with the provision in Defendants' proposal allowing four in-house litigation counsel per party access to Confidential materials. During a meet and confer, Defendants assured the FTC that the in-house designees would have no responsibility for competitive decisions. Defendants also stated that the names of the designees would be disclosed pursuant to the express terms of the draft protective order and indicated that if receiving the names might resolve the dispute, Defendants would be willing to provide them following the call. The FTC filed its motion hours later. In the interest of compromise, Microsoft and Activision have now reduced their proposed number of designees to three and two in-house lawyers respectively.

## LEGAL STANDARD

In deciding whether to grant in-house counsel access to confidential materials, courts "must balance the risk to [one party] of inadvertent disclosure of trade secrets to competitors against the risk to [the other party] that protection of . . . trade secrets impair[s] prosecution of [its] claims." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). The risk of inadvertent disclosure is assessed by asking whether the in-house counsel to be granted access is

"involved in 'competitive decisionmaking;' that is, advising on decisions about pricing or design made in light of similar or corresponding information about a competitor." *Id.* at 1470.

## ARGUMENT

The FTC speculates that granting Defendants' in-house litigation counsel access to trial exhibits *could* result in the disclosure of Confidential information to competitive decisionmakers at the company. But Defendants' proposed protective order, Ex. A ¶ 8, expressly contemplates that the individuals given access to Confidential trial exhibits are not and will not be involved in competitive decision-making, and that these individuals would view the exhibits either at outside counsel's trial site or in a secure data room and sign an agreement to be bound by the protective order's terms. *See Wisk Aero LLC v. Archer Aviation Inc.*, No. 3:21-CV-02450-WHO, 2022 WL 6251010, at *2 (N.D. Cal. Sept. 16, 2022) (in-house counsel access permissible where, among other things, the protective order contained safeguards). As set out in the attached declarations, Exs. B–F, Defendants' five designated in-house counsel have no involvement in competitive decision-making and are the day-to-day managers of this litigation and legal advisors to their company on the issues in this litigation. Their job responsibilities involve responding to regulatory inquiries, overseeing litigation, supervising outside counsel, and managing compliance with competition laws and regulations for Microsoft and Activision worldwide. These individuals require access to Confidential material on the parties' exhibits to meaningfully direct outside counsel and manage this preliminary injunction proceeding.

The FTC's position is especially untenable given that the FTC frequently stipulates to protective orders that provide in-house litigation counsel some access to Confidential material. *See, e.g., FTC v. Meta Platforms, Inc.*, No. 1:20-cv-03590-JEB, ECF No. 134 at 13 (Mar. 25, 2022) (permitting disclosure of highly confidential information to two in-house counsel "with responsibilities for the litigation"); *FTC v. Staples Inc.*, No. 1:15-cv-02115-EGS, ECF 63 at 4 (D.D.C. Jan. 10, 2016) (permitting disclosure of confidential information to designated in-house counsel). Indeed, mere months ago, the FTC signed onto a protective order allowing access to three in-house counsel "with responsibilities for litigation of th[e] action" in a preliminary injunction proceeding in the Northern District of California. *FTC v. Meta Platforms, Inc.*, No.

5:22-cv-04325-EJD, ECF No. 80 at 5 (Aug. 24, 2022).  Defendants modeled their proposed protective order on the *Meta* order, and the FTC offered no explanation whatsoever during the parties' meet and confer or in its motion as to how this matter is distinguishable.  That is because no principled distinction exists.

The FTC's arguments are unavailing or beside the point.  *First*, Defendants' in-house litigation counsel are not permitted to see Confidential material in the Part 3 proceeding because under FTC rules, "the Administrative Law Judge *shall issue* a protective order as set forth in the appendix to this section," and the Appendix is the "Standard Protective Order" that disallows in-house counsel access to Confidential information.  16 C.F.R. § 3.31(d) (emphasis added).  Obviously, no such rule applies in federal court, and federal judges routinely recognize the need for in-house counsel to obtain access to confidential materials to direct the litigation.  *See, e.g.*, *MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*, No. 19-CV-1865-GPC (DEB), 2021 WL 389820, at *4 (S.D. Cal. Feb. 4, 2021) ("Because they are not competitive decisionmakers, and because they have safeguards in place to protect against further disclosure of Plaintiffs' trade secrets and source codes, the Court finds that the *Brown Bag* factors do not support denying Mses. Nakly, Kibbe, or Katz access to any of the discovery generated in this case."); *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1469 (Fed. Cir. 1984) (seminal case holding that "status as in-house counsel cannot alone create that probability of serious risk to confidentiality and cannot therefore serve as the sole basis for denial of access").  Indeed, another district court has granted in-house counsel access to all Confidential evidence in an FTC proceeding because "[i]t would be unfair. . . for the government to attempt to prevent a private business transaction based, even in part, on evidence that is withheld from the actual Defendants (as distinct from their outside counsel)."  *See FTC v. Sysco*, 83 F. Supp. 3d 1, 4 (D.D.C. 2015).  The same is true here.

*Second*, without even knowing the identities of Defendants' proposed designees, the FTC argues that Defendants' in-house counsel are "high-ranking" and cites to inapposite caselaw denying access to a chief legal officer and executive vice president.  Defendants are not proposing to designate for access its chief legal officer or any comparably senior in-house lawyer but instead is proposing to grant access to the lawyers who manage the litigation.

*Third*, the FTC emphasizes that third parties produced "hundreds of thousands of commercially sensitive documents" and that there is insufficient time for third parties to protect their interests. But as set out in Defendants' proposed protective order, in-house counsel access would be limited to Confidential documents on the parties' exhibit lists, which is a universe of only 111 documents (35 documents on the FTC's exhibit list, and 76 on Defendants').

*Finally*, Defendants will need to respond to the evidence as it comes in, and in-house lawyers most familiar with the company are able to use their detailed knowledge of the company and experience in the industry to help outside counsel develop a response and collect the information needed for that response. Preventing in-house counsel—who are responsible for managing this fast-paced, high-stakes hearing—from viewing the FTC's exhibits would prejudice Defendants' ability to defend themselves.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's Motion for Protective Order and enter Defendants' proposed Protective Order.

Dated: June 19, 2023

By: */s/ Beth Wilkinson*

| | |
|---|---|
| Jack DiCanio (Bar No. 138782)<br>Caroline Van Ness (Bar No. 281675)<br>SKADDEN, ARPS, SLATE, MEAGHER &<br>FLOM LLP<br>525 University Avenue<br>Palo Alto, California 94301<br>Telephone: (650) 470-4500<br>Facsimile: (213) 621-5430<br>Email: jack.dicanio@skadden.com<br>Email: caroline.vanness@skadden.com<br><br>Steven C. Sunshine (*pro hac vice*)<br>Julia K. York (*pro hac vice*)<br>SKADDEN, ARPS, SLATE, MEAGHER &<br>FLOM LLP<br>1440 New York Avenue, N.W.<br>Washington, DC 20005-2111<br>Telephone: (202) 371-7000<br>Facsimile: (202) 393-5760<br>Email: steven.sunshine@skadden.com<br>Email: julia.york@skadden.com<br><br>Maria Raptis (*pro hac vice*)<br>Matthew M. Martino (*pro hac vice*)<br>Michael J. Sheerin (*pro hac vice*)<br>Evan R. Kreiner (*pro hac vice*)<br>Bradley J. Pierson (*pro hac vice*)<br>Jessica R. Watters((*pro hac vice*)<br>SKADDEN, ARPS, SLATE, MEAGHER &<br>FLOM LLP<br>1 Manhattan West<br>New York, NY 10001<br>Telephone: (212) 735-3000<br>Fax: (212) 735-2000<br>Email: maria.raptis@skadden.com<br>Email: matthew.martino@skadden.com<br>Email: michael.sheerin@skadden.com<br>Email: evan.kreiner@skadden.com<br>Email: bradley.pierson@skadden.com<br>Email: jessica.watters@skadden.com<br><br>*Counsel for Defendant Activision Blizzard, Inc* | Beth Wilkinson (*pro hac vice*)<br>Rakesh Kilaru (*pro hac vice*)<br>Kieran Gostin (*pro hac vice*)<br>Grace Hill (*pro hac vice*)<br>Anastasia Pastan (*pro hac vice*)<br>Sarah Neuman (*pro hac vice*)<br>WILKINSON STEKLOFF LLP<br>2001 M Street NW, 10th Floor<br>Washington, DC 20036<br>Telephone: (202) 847-4000<br>Facsimile: (202) 847-4005<br>bwilkinson@wilkinsonstekloff.com<br>rkilaru@wilkinsonstekloff.com<br>kgostin@wilkinsonstekloff.com<br>ghill@wilkinsonstekloff.com<br>apastan@wilkinsonstekloff.com<br>sneuman@wilkinsonstekloff.com<br><br>Bambo Obaro (Bar No. 267683)<br>Weil, Gotshal and Manges<br>201 Redwood Shores Parkway<br>Redwood Shores, CA 94065<br>Telephone: (650) 802-3083<br>Facsimile: (650) 802-3100<br>bambo.obaro@weil.com<br><br>Michael Moiseyev (*pro hac vice*)<br>Megan A. Granger (*pro hac vice*)<br>WEIL, GOTSHAL &MANGES LLP<br>2001 M Street, NW<br>Suite 600<br>Washington, DC 20036<br>Telephone: (202) 682-7000<br>Facsimile: (202) 857-0940<br>michael.moiseyev@weil.com<br>megan.granger@weil.com<br><br>*Counsel for Defendant Microsoft Corp.* |