VENABLE LLP
Steven E. Swaney (SBN 221437)
seswaney@venable.com
101 California Street, Suite 3800
San Francisco, CA 94111
Telephone:  415.653.3750
Facsimile:  415.653.3755

Leonard L. Gordon (*pro hac vice* application forthcoming)
llgordon@Venable.com
Benjamin P. Argyle (*pro hac vice* application forthcoming)
bpargyle@Venable.com
151 W. 42nd Street, 49th Floor
New York, NY 10036
Telephone:  212.307.5500
Facsimile:  212.307.5598

Attorneys for Non-Party Nintendo of America, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION, et al.<br><br>Defendant. | Case No. 23-cv-02880-JSC<br><br>**NON-PARTY NINTENDO OF AMERICA INC. STATEMENT PURSUANT TO LOCAL RULE 79-5(f) AS TO WHY ITS CONFIDENTIAL INFORMATION SHOULD BE FILED UNDER SEAL** |

Pursuant to N.D. Cal. Civil Local Rule 79-5, Non-Party Nintendo of America Inc. ("NOA") hereby submits this Statement as to why its confidential information contained in Plaintiff's exhibits PX3066, PX3161, PX3219, PX3221, PX3270, PX8002 and Defendants' exhibits RX2001, RX2002, RX2040, RX2058, RX2065, RX2089, RX2096, RX2104, RX2106, RX2108, RX2109, RX2111, RX2116, RX2124, RX2125, RX2126 and RX2127 should be filed under seal (the "Statement").  This Statement is made following the receipt of Plaintiff's letter dated June 18, 2023, and Defendants' emails dated June 19 and 20, 2023, identifying NOA documents they intend to use as exhibits at the upcoming evidentiary hearing in the action captioned above.

I.   **INTRODUCTION**

On June 18, 2023, Plaintiff informed NOA that it was in the process of identifying certain exhibits Plaintiff intended to offer at the evidentiary hearing set to begin June 22, 2023.  (Dkt. No. 76), including certain documents that NOA produced in connection with the Federal Trade Commission's ("FTC") review and subsequent administrative proceeding challenging the proposed acquisition at issue in this proceeding.  Defendant Microsoft Corp. ("Microsoft") sent a similar email on June 19, 2023 regarding NOA documents it and Defendant Activision Blizzard, Inc. ("Activision") intend to use at the evidentiary hearing.

Plaintiff and Defendants further informed NOA that pursuant to the Court's previous order (Dkt. No. 76), the parties were to file a Joint Statement and exhibit list, identifying which exhibits they intended to present at the evidentiary hearing and where on the docket the Court could locate the related N.D. Cal. Civil Local Rule 79-5 statement and/or declarations.  The Joint Statement was filed on June 20, 2023.  (Dkt. No. 129).  NOA filed a pending request for an extension of time on June 20, 2023.  (Dkt. No. 136).

As discussed in this Statement, the NOA documents on the parties' exhibit lists contain NOA's confidential information that was produced to the FTC in connection with the FTC's investigation and then in the still-pending FTC Part 3 administrative proceeding, both regarding Microsoft's proposed acquisition of Activision.  NOA was not a target of the FTC's review of the proposed acquisition, nor is NOA a party to the Part 3 administrative proceeding or this


federal court action.

The Federal Trade Commission Act broadly governs confidential information submitted pursuant to both FTC investigations and administrative litigation proceedings. For example, the Act instructs that the Commission "shall not have any authority to make public any trade secret or any commercial or financial information which is obtained from any person and which is privileged or confidential." 15 U.S.C.S. § 46(f).[1] For administrative litigation proceedings, the Act designates as privileged and confidential, *inter alia*, trade secrets, commercial and financial information, and competitively sensitive information. 16 C.F.R. § 4.10(g). The Administrative Law Judge ("ALJ") presiding over the proceeding entered a Protective Order Governing Confidential Material on December 9, 2022 "[i]n order to protect the parties and third parties against improper use and disclosure of confidential information." 16 C.F.R. § 3.31(d). (FTC Dkt. No. 9412, Document No. 606385, Dec. 9, 2022).

Additionally, the FTC's current proposed Protective Order for this proceeding defines "Confidential Information" to include "(i) information copied or extracted, summarized or compiled from Confidential Information, and (ii) testimony, conversations, or presentations that might reveal Confidential Information." (Dkt. No. 112-1). NOA filed a statement in support of the FTC's proposed Protective Order (Dkt. No. 156) and believes it would protect the presentation of information that would reveal NOA's confidential business strategy.

## II.    APPLICABLE LEGAL STANDARD

While the public has a right of access to the Court's files, "[i]n the case of non-dispositive motions . . . the presumption in favor of public access does not apply with equal force." *Prosurance Grp., Inc. v. Liberty Mut. Grp., Inc.*, 2011 WL 704456, at *1 (N.D. Cal. Feb. 18, 2011) (citing *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). "Thus, a showing of good cause will suffice to justify sealing material attached to non-

---

[1] *See also* 15 U.S.C. § 57b-2 (regarding documents and transcripts of oral testimony received by a federal agency pursuant to compulsory process or investigation, "no documentary material, tangible things, reports or answers to questions, and transcripts of oral testimony shall be available for examination by any individual other than a duly authorized officer or employee of the Commission without the consent of the person who produced the material, things, or transcripts").


1  dispositive motions." *Id.*  Courts have applied the good cause standard when reviewing motions
2  related to a preliminary injunction.  *See Jam Cellars, Inc. v. Wine Grp. LLC*, 2020 WL 5576346,
3  at *2 (N.D. Cal. Sept. 17, 2020).

4        Non-parties receive special deference when issues of confidentiality are considered. *See*
5  *United States v. Bazaarvoice, Inc.*, 2014 WL 11297188, at *1 (N.D. Cal. Jan. 21, 2014) (granting
6  motion to seal third-party trial exhibits, noting that disclosure could "cause damage to third
7  parties if made public" and would "chill investigations in the future where third-party documents
8  are essential").

9        Under Rule 26(c), "a trial court has broad discretion to permit sealing of court documents
10 for, among other things, the protection of 'a trade secret or other confidential research,
11 development, or commercial information.'  Fed. R. Civ. P. 26(c)(1)(G).  The Ninth Circuit
12 adopted the definition of "trade secrets" set forth in the Restatement of Torts, finding that '[a]
13 trade secret may consist of any formula, pattern, device or compilation of information which is
14 used in one's business, and which gives him an opportunity to obtain an advantage over
15 competitors who do not know or use it.'"  *Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*, 345 F.
16 Supp. 3d 1111, 1120 (N.D. Cal. 2018) (citing *Clark v. Bunker*, 453 F.2d 1006, 1009 (9th Cir.
17 1972)).

## III. ARGUMENT

19       Good cause exists to file NOA's information under seal because the information consists
20 of NOA's confidential business information, the disclosure of which would cause competitive
21 injury.  Courts have found compelling reasons – a standard *higher* than the one required here – to
22 seal confidential information that could harm a party's competitive standing.  *See Snapkeys, Ltd.*
23 *v. Google LLC*, 2021 WL 1951250, at *3 (N.D. Cal. May 14, 2021).

### A. Plaintiff's Exhibits

25       PX3161 is an internal, highly sensitive and confidential NOA report that analyzes which
26 consumer segments Nintendo should prioritize, as well as which products and messaging can
27 most effectively reach those audiences.  (Declaration of Steven Singer, June 21, 2023 ("Singer
28 Decl."), ¶¶ 6-7).  This report is not generated regularly, but rather was created specifically to

analyze and review detailed consumer console use by household, data which is closely guarded at NOA.  (*Id.* ¶¶ 6-7).  Disclosure of this analysis will allow competitors direct insight into NOA's confidential business information and strategy, causing competitive harm.  (*Id.* ¶¶ 4, 6-7). If this information were to be revealed, NOA's competitors and potential business partners would gain understanding into NOA's internal deliberations, how NOA builds and maintains its relationship with customers, and strategies in the highly competitive gaming market.  (*Id.* ¶¶ 4, 6-7).  *See, e.g.*, *In re Qualcomm Antitrust Litig.*, 2022 WL 4137580, at *2 (N.D. Cal. Aug. 26, 2022) ("'confidential business information' in the form of 'license agreements, financial terms, details of confidential licensing negotiations, and <u>business strategies</u>' satisfies the 'compelling reasons' standard." (emphasis added)).

        PX3066 and PX3270 are confidential documents that are only available to developers registered under Nintendo's Developer Portal.[2]  Access to the Developer Portal requires the developer to agree to a non-disclosure agreement.  The developers are instructed not to duplicate, copy, print, transfer, loan, or otherwise disseminate the information within the Developer Portal without the express prior approval of Nintendo.  The documents include specific Switch hardware specifications, system features, and documentation for developers.  (Singer Decl. ¶ 5). *See Arista Networks, Inc. v. Cisco Sys.*, 2017 WL 6043303, at *3-4 (N.D. Cal. Nov. 28, 2017) (finding that disclosure of internal assessments of products and development strategies would result in competitive harm and thus the information is sealable).  When the public release of documents could give competitors an unfair advantage in the development or marketing of rival products, courts have sealed those documents.  *Exeltis USA Inc. v. First Databank, Inc.*, 2020 WL 2838812, at *2 (N.D. Cal. June 1, 2020).  Here, competitors and rival developers might exploit the information in these documents to create and market products that would compete directly with NOA resulting in competitive harm, and hackers/cheaters may utilize the

---

[2] Nintendo's Developer Portal gives controlled access to Nintendo developer tools and resources to create and publish games and applications for current Nintendo platforms. (Singer Decl. ¶ 5).

1  information to compromise Nintendo hardware. (Singer Decl. ¶¶ 4, 5).

2  PX3219 and PX3221 are highly confidential, communications and negotiations between some of the highest-level executives at NOA and Microsoft. (Singer Decl. ¶ 9). Disclosure of confidential negotiations between NOA and Microsoft would result in substantial harm to NOA's competitive standing as competitors would undoubtedly seek to leverage such information in potential future negotiations with NOA with the result being that NOA's negotiation position would be compromised. (*Id.* ¶¶ 4, 9). *See Lenovo (United States) Inc. v. IPCom GmbH & Co., KG*, 2022 WL 2313948, at *2 (N.D. Cal. June 28, 2022) (ruling that there are compelling reasons to seal information relating to the specific details and substance of licensing negotiations).

Alternatively, NOA seeks at minimum to seal the names and email addresses contained in the emails to protect the privacy of those individuals. *See Am. Automobile Ass'n of N. Cal., Nev., & Utah*, 2019 WL 1206748, at *2 (N.D. Cal. Mar. 14, 2019) (finding compelling reasons to seal personally identifiable information, "including names, addresses, phone numbers, and email addresses"); *see also Nursing Home Pension Fund v. Oracle Corp.*, 2007 WL 3232267, at *2 (N.D. Cal. Nov. 1, 2007) ("The Ninth Circuit has found that compelling reasons exist to keep personal information confidential to protect an individual's privacy interest and to prevent exposure to harm or identity theft." (citations omitted)).

PX8002 is a declaration from an NOA executive prepared by NOA and outside counsel relating to the FTC's prior investigation before the related FTC Part 3 administrative litigation proceedings commenced. (Singer Decl. ¶ 13). The declaration that NOA seeks to seal was designated as confidential under FTC confidentiality rules. (*Id.* ¶ 13). NOA seeks to seal the declaration because it contains confidential and proprietary business information relating to NOA's strategy and how it competes in the gaming market. (*Id.* ¶ 13). *See Finisar Corp. v. Nistica, Inc.*, 2015 WL 3988132, at *4 (N.D. Cal. June 30, 2015) (granting motion to seal for transcripts designated Highly Confidential-Attorneys' Eyes Only pursuant to a Stipulated Protective Order because testimony contained confidential, trade secret, and proprietary information related to products and business practices).

B. **Defendants' Exhibits**

RX2096 is an internal, confidential report relating to a survey that NOA's Business Analysis and Planning team commissioned to examine consumer perception and interest in Nintendo Switch Online. (Singer Decl. ¶¶ 6, 8). The study also analyzes how to advertise the platform to potential users and how the platform is perceived against competing, similar online platforms. (*Id.* ¶¶ 6, 8). Public disclosure of this document would allow competitors that also offer similar online gaming platforms to discern NOA's confidential review of its own product. (*Id.* ¶¶ 4, 6, 8).

RX2106, RX2108, RX2109, and RX2111 are emails between NOA executives and Microsoft executives regarding the terms of a sensitive business negotiation. (Singer Decl. ¶ 9). NOA requests that they remain under seal for the same reasons stated in reference to Plaintiff's email exhibits – namely, that disclosure of these private emails would result in competitive harm to NOA. (*Id.* ¶¶ 4, 9). Alternatively, NOA seeks at minimum to seal the names and email addresses contained in the emails to protect the privacy of those individuals for the same reasons stated in reference to Plaintiff's email exhibits.

RX2001 and RX2002 are internal, confidential marketing campaign plans for specific NOA products and services. (Singer Decl. ¶ 11). RX2104, RX2116, RX2124, RX2125, RX2126, and RX2127 are internal presentations discussing and analyzing product market performance, customer relations, campaign themes, budgets, and corporate decision making. (*Id.* ¶ 10). Courts in this district have found that marketing materials are sealable. *See, e.g.*, *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1162 (N.D. Cal. Jan. 25, 2021) (compelling reasons may exist to seal marketing strategies) (citation omitted). Disclosing this information would harm NOA's capability to distinguish itself in the market and risk competitors replicating or undermining NOA's business strategies. (Singer Decl. ¶¶ 4, 10-11). Public disclosure would allow competitors insight as to how NOA strategizes and conducts its marketing, a crucial and distinct component of NOA's overall business strategy. (*Id.* ¶¶ 4, 10-11).

RX2040, RX2058, RX2065, and RX2089 are internal, competitive outlook presentations containing summaries of how Nintendo analyzes and characterizes its competitors' strategic

1  differences. (Singer Decl. ¶ 12). Nintendo's internal reviews of competition and competitors are highly sensitive, and public disclosure would allow competitors to see how Nintendo competes against them, all of which would be detrimental to Nintendo's business. (*Id.* ¶¶ 4, 12). Courts have found such documents to be sealable. *See Hadley v. Kellogg Sales Co.*, 2018 U.S. Dist. LEXIS 224314, 2018 WL 7814785, at *2 (N.D. Cal. Sept. 5, 2018) (finding "compelling reasons" to seal information providing insight into "business strategies and internal decision making").

If the Court decides that it requires certain portions of NOA's documents to be made public, NOA respectfully requests that all the documents remain provisionally under seal until NOA can meet and to confer with the parties on which portions should remain redacted. It is currently unclear as to which portions of the documents the parties intend to rely on for the evidentiary hearing, making it difficult for NOA to make specific, targeted requests. NOA makes this request given the accelerated proceedings, time constraints, and highly sensitive nature of NOA's documents.

## IV.   CONCLUSION

For the foregoing reasons, Non-Party NOA respectfully request the Court to keep sealed Plaintiff's exhibits marked PX3066, PX3161, PX3219, PX3221, PX3270, PX8002 and Defendants' exhibits marked RX2001, RX2002, RX2040, RX2058, RX2065, RX2089, RX2096, RX2104, RX2106, RX2108, RX2109, RX2111, RX2116, RX2124, RX2125, RX2126 and RX2127.

Dated:  June 21, 2023                                      VENABLE LLP

By:  /s/ *Steven E. Swaney*
Steven E. Swaney
Leonard L. Gordon (pro hac vice application forthcoming)
Benjamin P. Argyle (pro hac vice application forthcoming)

Attorneys for Non-Party Nintendo of America, Inc.