VENABLE LLP
Steven E. Swaney (SBN 221437)
seswaney@venable.com
101 California Street, Suite 3800
San Francisco, CA 94111
Telephone:     415.653.3750
Facsimile:     415.653.3755

Leonard L. Gordon (*pro hac vice* application forthcoming)
llgordon@Venable.com
Benjamin P. Argyle (*pro hac vice* application forthcoming)
bpargyle@Venable.com
151 W. 42nd Street, 49th Floor
New York, NY 10036
Telephone:     212.307.5500
Facsimile:     212.307.5598

Attorney for Non-Party Nintendo of America

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION | Case No. 23-cv-02880-JSC |
| Plaintiff, | **DECLARATION OF STEVEN SINGER IN SUPPORT OF NON-PARTY NINTENDO OF AMERICA INC. STATEMENT PURSUANT TO LOCAL RULE 79-5(f) AS TO WHY ITS CONFIDENTIAL INFORMATION SHOULD BE FILED UNDER SEAL** |
| v. | |
| MICROSOFT CORPORATION, et al. | |
| Defendant. | |

VENABLE LLP
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415.653.3750

## DECLARATION OF STEVEN SINGER

I, Steven Singer, do solemnly declare under penalty of perjury as follows:

1.      I am currently Senior Vice President Publisher & Developer Relations at Nintendo of America Inc. ("NOA").  NOA is one of many subsidiaries of Nintendo Co., Ltd. ("NCL"), a corporation based in Japan.  Although NCL and each of its subsidiaries (including NOA) are separate companies, for purposes of this declaration I will refer to NCL and its subsidiaries together as "Nintendo."  I make this declaration in support of NOA's Statement Pursuant to Local Rule 79-5(f) As to Why Its Confidential Information Should Be Filed Under Seal in the case captioned above.  The facts stated in this declaration are based on my own personal knowledge and, if called as a witness, I could and would testify to those facts.

2.      In my current role at NOA as Senior Vice President Publisher & Developer Relations, I am responsible for managing the relations between Nintendo and its numerous content developers throughout the United States and Latin America.  I have been employed with NOA since April 1999.  I joined as Vice President – Latin America and was responsible for overseeing operations in the Latin America region.  I also provided support for Nintendo's operations in Southeast Asia, India, and the Middle East.  In January 2007, I became Vice President – Licensing.  In that role, I was responsible for licensing activities relating to Nintendo's brand and accessories.  Based on my work experience, I am familiar with Nintendo's business and strategies.  Nintendo keeps business strategy information confidential to protect itself from potential competitive harm.

3.      I understand that the Federal Trade Commission ("FTC") has filed in the action captioned above its Complaint for a Temporary Restraining Order and Preliminary Injunction on June 12, 2023 relating to the proposed acquisition of Defendant Activision Blizzard Inc. ("Activision") by Defendant Microsoft Corp. ("Microsoft") (collectively, "Defendants").  I also

understand the FTC and Defendants intend to offer certain exhibits at the upcoming evidentiary hearing on the preliminary injunction beginning June 22, 2023.

4.     I have reviewed the NOA documents discussed herein, which I understand are documents that Plaintiff and/or Defendants intend to offer as exhibits at the upcoming evidentiary hearing.  The information contained in those documents is sensitive and confidential business information that will cause competitive harm to Nintendo if publicly released, as described herein.

5.     Nintendo utilizes a Developer Portal that gives its business partners controlled access to Nintendo's developer tools and resources, in order to create and publish games and applications for current Nintendo platforms.  Access to the Developer Portal requires the developer to agree to a non-disclosure agreement.  They then must apply and be approved by the relevant departments in order to gain access.  The developers are instructed not to duplicate, copy, print, transfer, loan, or otherwise disseminate the information within the Developer Portal without the express prior approval of Nintendo, or use the materials for any purpose other than developing software for Nintendo platforms.  The documents include specific Switch hardware specifications, system features, and documentation for developers.  If confidential documents from Nintendo's Developer Portal were made public, competitors and rival developers would be able to rely on those documents to create and market competing products which would result in competitive harm to Nintendo.  Further, hackers and cheat-software individuals may utilize the information to compromise consumers' Nintendo hardware.  The related documents identified by the Plaintiff are PX3066 and PX3270.

6.     Nintendo has conducted its own primary research, drafted internal analyses, and commissioned external reports regarding Nintendo's current and potential consumers, including survey data, consumer opinion on products and services, and related competitor analyses.  These

efforts are led by Nintendo's Business Analysis and Planning team ("BAP").  This information is treated as confidential even within the Nintendo organization.  Nintendo uses this information and analyses to inform its business strategy.  This includes how Nintendo competes with other gaming companies in the highly competitive gaming market.  The reports on the parties' exhibit lists were not generated regularly, but rather created specifically to analyze and review detailed consumer console use.  They include extensive detail regarding the data underlying the analyses, as well as specific recommendations.  Public disclosure of Nintendo's internal reviews would allow competitors insight into Nintendo's strategies for maximizing its brand and product appeal and sales performance among Nintendo's target audiences, and to obtain that sensitive competitive information for free.

7.     Specifically, one of these reports analyzes which consumer segments Nintendo should prioritize, and discusses which products and messaging can most effectively reach those audiences.  This document is important in Nintendo's understanding of the overall gaming audience.  The related document identified by Plaintiff is PX3161.

8.     Another report is focused on Nintendo Switch Online, and studies consumer perception and interest in Nintendo's online platform.  The study also analyzes how to advertise the platform to potential users and how the platform is perceived against competing, similar online platforms.  The related document identified by Defendants is RX2096.

9.     Nintendo often engages with content publishers/providers, including Microsoft and Activision, to discuss and negotiate business deals.  These discussions are confidential and sensitive, and often take place between senior executives.  Disclosing these discussions would allow competitors to leverage confidential negotiation points in future negotiations with Nintendo that would adversely affect Nintendo's negotiation position.  The related emails identified by the parties are PX3219, PX3221, RX2106, RX2108, RX2109, and RX2111.

10.     One of NOA's main roles is to research, strategize, and execute on Nintendo's advertising and marketing ventures.  NOA's Sales, Marketing, and Communications department ("SMC") handles these sensitive matters.  NOA's SMC generates confidential reports that speak to topics such as product market performance, customer relations, campaign themes, budgets, and corporate decision making.  These reports also contain research on NOA's competitors and strategies on NOA's positioning in the gaming market.  Disclosing this information would harm NOA's capability to distinguish itself in the market and risk competitors replicating or undermining NOA's crucial marketing and advertising business strategies.  The related documents identified by the Defendants are RX2104, RX2116, RX2124, RX2125, RX2126, and RX2127.

11.     NOA's SMC also creates marketing campaign material for specific products, including hardware and game titles.  These materials contain campaign timelines, target audiences, and game-specific considerations.  Disclosing these documents would result in harm to NOA's overall advertising goals, as it would allow competitors to see when and how NOA markets its games.  The related documents identified by Defendants are RX2001 and RX2002.

12.     NOA's Production Development and Publishing ("PDP") and Strategic Initiatives ("SI") teams also create reports that look specifically at Nintendo's competitors' actual and anticipated actions.  These reports contain Nintendo's internal interpretation of competitors' and their strategies.  Public disclosure would allow competitors to know Nintendo's view on their own businesses and competing products and services, which would harm Nintendo's position in the market.  The related documents identified by Defendants are RX2040, RX2058, RX2065, and RX2089.

13.     NOA voluntarily participated in an FTC investigatory proceeding related to the proposed acquisition of Activision by Microsoft.  The documents produced during the

investigatory period were pursuant to FTC confidentiality rules.  As part of those proceedings, NOA prepared a declaration with the assistance of outside counsel. The declaration reveals NOA's strategy and how it seeks to compete in the gaming market.  The related document identified by Plaintiff is PX8002.

Executed this 21st day of June 2023 in Redmond, Washington.

*Steven Singer*

_____

Steven Singer

DECL. OF STEVEN SINGER ISO NINTENDO STATEMENT RE UNDER SEAL