VENABLE LLP
Steven E. Swaney (SBN 221437)
seswaney@venable.com
101 California Street, Suite 3800
San Francisco, CA 94111
Telephone:  415.653.3750
Facsimile:  415.653.3755

Leonard L. Gordon (*pro hac vice*)
llgordon@Venable.com
Benjamin P. Argyle (*pro hac vice*)
bpargyle@Venable.com
151 W. 42nd Street, 49th Floor
New York, NY 10036
Telephone:  212.307.5500
Facsimile:  212.307.5598

Attorneys for Non-Party Nintendo of America Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>and<br><br>ACTIVISION BLIZZARD, INC.,<br><br>Defendants. | Case No. 23-cv-02880-JSC<br><br>**NON-PARTY NINTENDO OF AMERICA INC. STATEMENT PURSUANT TO LOCAL RULE 79-5(f) AS TO WHY PX7059 AND PX7065 SHOULD REMAIN UNDER SEAL** |

Pursuant to N.D. Cal. Civil Local Rule 79-5, Non-Party Nintendo of America Inc. ("NOA") hereby submits this Statement as to why Plaintiff's Exhibits PX7059 and PX7065, as well as summaries and citations to those exhibits, are NOA's confidential information that should remain under seal (the "Statement").

I.   **INTRODUCTION**

The exhibits – PX7059 and PX7065 – are deposition transcripts of witnesses employed by NOA that contain testimony discussing NOA's confidential information.  The transcripts are from depositions taken in the still-pending FTC Part 3 administrative proceeding regarding Defendants Microsoft Corp.'s ("Microsoft") proposed acquisition of Activision Blizzard, Inc. ("Activision"),  *In the Matter of Microsoft Corp. and Activision Blizzard, Inc.*, before the FTC Office of Administrative Law Judges, Docket No. 9412.  The transcripts cover confidential business information of NOA including documents produced to the FTC in connection with the FTC's pre-complaint investigation and in the Part 3 proceeding.  NOA was not a target of the FTC's review of the proposed acquisition, nor is NOA a party to the Part 3 administrative proceeding or this federal court action.

On June 18, 2023, Plaintiff Federal Trade Commission ("FTC") informed NOA that it was in the process of identifying certain exhibits Plaintiff intended to offer at the evidentiary hearing set to begin June 22, 2023 (Dkt. No. 76), including the deposition transcripts in question. On June 19, 2023, counsel for NOA inquired whether the FTC intended to introduce only limited portions of the transcripts or the transcripts in their entirety.  The FTC indicated the latter.  Thus, NOA's counsel requested consent to file a one-week request extension to Tuesday, June 27, 2023 by 5:00 pm PT.  Plaintiff consented, and NOA filed its request on June 20, 2023.  (Dkt. No. 136). Plaintiff FTC has not indicated that it intends to introduce any of the testimony contained in PX7059 or PX7065 in its case-in-chief at the evidentiary hearing.

On June 21, 2023, Defendants informed NOA that they intended to play portions of the videorecorded testimony transcribed in PX7065 at the evidentiary hearing.  Defendants designated approximately 136 lines of testimony – fewer than six (6) pages out of the 260-page deposition transcript.  In response, the FTC counter-designated approximately 155 lines of

2

NON-PARTY NINTENDO OF AMERICA INC. STATEMENT PURSUANT TO LOCAL RULE 79-5(f) AS TO WHY PX7059 AND PX7065 SHOULD REMAIN UNDER SEAL

Case No. 23-cv-02880-JSC

1  testimony – fewer than seven (7) pages.  Defendants then counter-counter-designated
2  approximately 79 more lines of testimony – fewer than 4 pages.   None of the parties have
3  indicated that they intend to use the other approximately 245 pages of PX7065 (94% of the
4  transcript), nor any part of PX7059, at the evidentiary hearing.

5  **II.    ARGUMENT**

6        NOA respectfully requests that the Court seal PX7059 and PX7065 in their entirety, and
7  view and listen to the video recording of either deposition *in camera* only.  While the transcripts
8  are long and cover a wide swath of topics, (i) the FTC informed NOA that it does not it intend to
9  rely on any part of the transcripts in its case-in-chief at the evidentiary hearing, (ii) Defendants
10 have indicated that they intend to introduce fewer than 9 pages of testimony at the evidentiary
11 hearing, and the FTC has counter-designated fewer than 7 additional pages of testimony in
12 response.  Thus, as to the entirety of PX7059 and over 94% of PX7065, whatever relevance the
13 parties attach to these exhibits is heavily outweighed by the extensive confidentiality concerns
14 discussed below, and the most exigent course is to seal the exhibits in their entirety.

15       Alternatively, NOA respectfully requests that the Court seal the portions of the exhibits
16 identified in the two charts below, and view and listen to the video recording of these portions *in*
17 *camera* only.  The charts below group and categorize the testimony by the specific
18 confidentiality topic, as follows:

19       <u>Category 1 (Research and Development for Future Business)</u> contains testimony
20 discussing Nintendo's research and development for its future business, including its potential
21 future products.  Nintendo's future product intentions are among the most sensitive trade secrets.
22 It would be difficult to overstate the harmful competitive and economic effects of the release of
23 information about Nintendo's future products.

24       <u>Category 2 (Gaming Content Development)</u> is testimony containing details of the internal
25 processes Nintendo utilizes to develop its gaming content.  As to first-party gaming content, this
26 includes, for example, discussions of Nintendo's prioritization and allocation of resources for
27 first-party game development, technical requirements, and performance of Nintendo's hardware,
28 and – most sensitively – forward looking discussions regarding Nintendo's hardware, software,

and marketing intentions. As to third-party gaming content, this category includes, for examples, details about the Nintendo Developer Portal, NOA's relationships with third-party developers and publishers (both generally and as to specific entities), and terms and negotiations of third-party agreements (same). Public disclosure of information regarding these topics would result in competitors gaining insight into how Nintendo develops and curates its gaming content.

Category 3 (Competitive Approach) contains testimony regarding the deponents' views of and approach to competition with Nintendo's competitors, including target audiences, console comparisons, competitive advantages, strategic differences, and overall assessments of the competitive landscape. Public disclosure would allow competitors to learn Nintendo's view on their own businesses and competing products and services, which would harm Nintendo's position in the market.

Category 4 (Internal Discussions of LOI and Side Letter) contains testimony discussing Nintendo's internal discussion of the December 6, 2022 agreement ("LOI") and February 10, 2023 agreement ("Side Letter") between Nintendo and Microsoft regarding bringing *Call of Duty* titles to the Nintendo platform post-acquisition. Public disclosure would reveal Nintendo's strategic thought process when negotiating with third-party partners, which would disadvantage Nintendo in future negotiations.

Category 5 (Confidential Negotiations with Microsoft regarding LOI and Side Letter) is similar to Category 4 (internal Nintendo discussions of the LOI and Side Letter), except that this testimony discusses the confidential negotiations between NOA and Microsoft regarding those agreements, including a discussion of NOA's "usual" business terms and whether the terms of the LOI and Side Letter depart from those usual terms. As with Category 5, this Category 6 contains confidential business information that Nintendo's competitors could use to undermine Nintendo's negotiations with third-party partners in the future.

Category 6 (Witness's Understanding of LOI and Side Letter) contains testimony in which counsel for the parties to this action asked Nintendo's witnesses – neither of whom are attorneys – for their interpretation of the LOI and Side Letter. This testimony raises two concerns. First, the specific terms of the LOI and Side Letter are not public information, but the

4

NON-PARTY NINTENDO OF AMERICA INC. STATEMENT PURSUANT TO LOCAL RULE 79-5(f) AS TO WHY PX7059 AND PX7065 SHOULD REMAIN UNDER SEAL
Case No. 23-cv-02880-JSC

1  testimony reveals those specific contract terms.  Disclosure of these terms will harm NOA in
2  negotiating future contracts with third-party developers and publishers.  Second, the witness's
3  interpretation of the agreements is immaterial – the agreements speak for themselves, and only
4  the Court can may determine their meaning.  The witness's own layman's interpretation is not
5  necessary for the Court to determine the issues before it and, in light of the significant
6  competitive concerns discussed above, should not be part of the record unless under seal.

7        Category 7 (Confidential Business Information) contains testimony discussing NOA's
8  corporate strategy, investment and allocation of resources, and internal decision-making
9  processes unrelated to the other specific issues discussed above.  Nintendo's implementation of
10  its corporate strategy is confidential information that its competitors could use to undercut
11  Nintendo's competitive position and advantages.

12        Category 8 (Transcript Reference Tables) are the portions of the deposition transcripts
13  containing the errata sheet, the list of deposition exhibits – none of which are included in either
14  PX7059 or PX7065 – and the word index that the court reporter attached to the transcript.  None
15  of the witnesses' testimony is included in the cited pages in this category.  The information
16  contained in this category contains page-and-line citations to specific words and exhibits, and
17  therefore could be used to reveal the subject and content of the testimony contained in Categories
18  1 through 7.

19      A.    PX7059

| Category | Transcript Citation(s) |
|---|---|
| Category 1 (Research and Development for Future Business) | (20:5-22:5); (61:9-62:9); (62:11-64:23) |
| Category 2 (Gaming Content Development) | (19:4-19:23); (20:5-22:5); (24:17-25:8); (25:10-25:24); (25:25-27:24); (28:1-29:9); (29:10-30:1); (31:3-31:8); (31:9-31:18); (31:20-33:15); (34:18-36:3); (40:5-41:2); (41:4-42:19); (46:25-48:5); (48:7-49:12); (50:7-51:16); (56:23-57:8); (57:23-58:17); (59:14-59:18); (60:16-61:7); (62:11-64:23); (64:25-65:24); (66:9-68:15); (68:16-70:17); (71:15-72:9); (72:11-73:11); (81:12-82:12); (84:19-85:8); (101:4-102:9); (104:11-105:23); (106:22-107:4); (110:9-113:8); (116:16-117:10); (139:1-139:5); (148:11-148:19); (149:11-151:7); (155:15-156:7) |

| | |
|---|---|
| Category 3 (Competitive Approach) | (22:7-22:25); (23:14-23:19); (24:17-25:8); (42:21-43:15); (43:24-45:3); (45:5-45:9); (45:15-46:2); (46:14-46:23); (94:14-95:3); (95:10-96:2); (113:25-115:3); (117:11-117:24); (118:7-118:24); (118:25-122:3); (122:4-122:9); (122:10-122:21); (153:12-153:21); (154:13-155:13); (155:15-156:7); (158:7-162:11) |
| Category 4 (Internal Discussions of LOI and Side Letter) | (146:11-147:6) |
| Category 5 (Confidential Negotiations with Microsoft regarding LOI and Side Letter) | (42:21-43:15) |
| Category 6 (Witness's Understanding of LOI and Side Letter) | (10:5-10:16); (143:3-143:10); (143:18-144:16); (144:18-144:25); (145:2-146:1); (146:11-147:6); (147:8-147:15); (156:9-157:14) |
| Category 7 (Confidential Business Information) | (17:25-18:8); (18:20-18:25); (30:5-30:17); (30:18-31:2); (34:18-36:3); (38:4-38:14); (70:19-72:9); (74:25-76:5); (76:16-77:18); (79:2-79:15); (79:17-80:12); (82:20-83:18); (85:15-86:3); (86:9-86:17); (89:1-89:8); (89:18-90:2); (90:4-90:21); (91:5-91:24); (92:7-94:12); (98:24-100:3); (102:10-103:3); (103:5-103:15); (103:17-104:8); (107:19-108:13); (108:15-109:7); (109:9-110:7); (122:23-123:10); (123:11-123:18); (123:25-125:16); (126:16-127:1); (128:2-128:11); (128:13-129:11); (139:17-140:3); (140:9-140:17); (141:1-141:7); (152:2-152:7) |
| Category 8 (Transcript Reference Tables) | 164:9-17; and pages PX7059-143 through PX7059-69 (word index) |

**B.     PX7065**

| Category | Transcript Citation(s) |
|---|---|
| Category 1 (Research and Development for Future Business) | (56:22-58:18); (133:19-134:5); (169:22-170:22); (170:23-171:12); (171:13-172:2); (172:3-172:10); (172:11-173:5); (173:6-175:8); (177:21-178:8) |
| Category 2 (Gaming Content Development) | (18:7-18:13); (18:14-19:10); (19:17-19:21); (19:22-20:12); (21:11-21:20); (21:24-24:7); (24:8-25:10); (25:15-28:2); (28:3-28:14); (28:15-29:9); (35:15-37:11); (44:20-45:13); (45:14-45:25); (46:1-46:20); (46:21-47:22); (47:23-48:15); (48:16-49:13); (49:14-50:3); (50:4-50:12); (50:13-50:23); (51:2-53:6); (53:7-54:24); (54:25-56:21); (56:22-58:18); (58:19-59:15); (59:16-60:18); (64:20-65:16); (65:17-66:20); (67:5-69:9); (120:16-122:6); (170:23-171:12); (171:13-172:2); (172:3-172:10); (172:11-173:5); (173:6-175:8); (185:8-185:17); (185:18-186:14); (187:18-189:13); (193:25-201:8); (203:17-204:15); (213:13-216:24); (223:17-224:6); (238:13-238:22); (238:23-239:6); (239:7-239:16); (240:7-241:5); (241:13-242:8) |

6

NON-PARTY NINTENDO OF AMERICA INC. STATEMENT PURSUANT TO LOCAL RULE 79-5(f) AS TO WHY PX7059 AND PX7065 SHOULD REMAIN UNDER SEAL
Case No. 23-cv-02880-JSC

| | |
|---|---|
| Category 3 (Competitive Approach) | (76:24-77:22); (79:7-83:12); (84:8-84:19); (88:11-88:9); (166:14-166:17); |
| Category 4 (Internal Discussions of LOI and Side Letter) | (92:4-92:24); (92:25-93:10); (93:20-94:22); (94:2-94:10); (94:11-94:22); (95:15-95:20); (97:2-97:23); (98:13-99:8); (99:9-99:15); (99:16-99:25); (100:1-101:7); (101:8-101:22); (101:23-102:23); (106:13-106:25); (163:7-164:10); (184:11-185:7); (191:4-191:8); (203:8-203:16); (204:16-204:18); (204:24-205:3); (255:21-256:16) |
| Category 5 (Confidential Negotiations with Microsoft regarding LOI and Side Letter) | (94:23-95:14); (95:15-95:20); (95:21-96:9); (96:10-97:1); (103:13-107:6); (107:7-112:9); (112:11-118:11); (118:12-120:15); (122:7-128:17); (128:18-132:16); (132:17-135:2); (135:4-145:2); (145:5-153:6); (153:24-156:25); (157:1-169:21); (175:9-175:21); (175:23-183:18); (184:9-189:13); (190:9-193:24); (201:9-205:3); (226:1-227:14); (227:16-231:19); (231:20-239:19); (259:12-259:16); (260:7-260:8) |
| Category 6 (Witness's Understanding of LOI and Side Letter) | (12:5-12:22); (12:23-13:10); (13:11-13:19); (13:20-13:25); (105:11-106:4); (106:5-106:12); (119:20-120:15); (122:20-123:16); (123:17-124:6); (124:7-124:20); (124:21-126:17); (126:9-126:24); (127:1-128:1); (128:2-128:11); (132:1-132:8); (133:10-133:18); (133:19-134:5); (134:6-135:2); (147:18-147:25); (148:1-148:16); (148:17-149:14); (150:7-151:15); (151:16-152:11); (158:5-158:25); (159:1-159:12); (159:13-159:25); (160:1-162:19); (162:20-163:6); (164:11-164:22); (164:23-165:21); (165:22-166:13); (166:18-167:12); (167:13-168:5); (168:6-168:12); (168:13-168:22); (169:2-169:13); (169:14-169:21); (175:9-175:21); (176:1-176:22); (176:23-177:20); (177:21-178:8); (178:9-178:18); (178:19-179:2); (179:7-179:14); (179:15-179:23); (179:24-180:7); (180:8-180:19); (180:20-181:5); (181:6-182:2); (182:3-182:20); (182:21-183:15); (186:15-187:11); (187:12-187:17); (233:17-234:1); (234:12-234:19); (235:3-235:11); (236:2-236:15); (238:3-238:12); (242:9-245:9); (245:10-247:16); (247:17-247:23); (247:24-248:10); (248:11-249:16); (249:17-250:4); (252:16-252:24) |
| Category 7 (Confidential Business Information) | (29:25-30:6); (41:1-41:13); (41:14-42:21); (42:22-43:4); (61:24-63:5); (75:23-76:9); (78:3-79:5); (207:5-208:13); (229:17-230:5); (230:15-231:5); (259:12-259:16); (260:7-260:8) |
| Category 8 (Transcript Reference Tables) | 6:13-8:25; 264:1-25; and pages PX7065-68 through PX7065-105 (word index) |

### III.   APPLICABLE LEGAL STANDARD

Non-parties receive special deference when issues of confidentiality are considered. *See United States v. Bazaarvoice, Inc.*, 2014 WL 11297188, at *1 (N.D. Cal. Jan. 21, 2014) (granting motion to seal third-party trial exhibits, noting that disclosure could "cause damage to third

parties if made public" and would "chill investigations in the future where third-party documents are essential").

While the public has a right of access to the Court's files, "[i]n the case of non-dispositive motions . . . the presumption in favor of public access does not apply with equal force." *Prosurance Grp., Inc. v. Liberty Mut. Grp., Inc.*, 2011 WL 704456, at *1 (N.D. Cal. Feb. 18, 2011) (citing *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). "Thus, a showing of good cause will suffice to justify sealing material attached to non-dispositive motions." *Id*. Courts have applied the good cause standard when reviewing motions related to a preliminary injunction. *See Jam Cellars, Inc. v. Wine Grp. LLC*, 2020 WL 5576346, at *2 (N.D. Cal. Sept. 17, 2020).

Under Fed. R. Civ. P. Rule 26(c), "a trial court has broad discretion to permit sealing of court documents for, among other things, the protection of 'a trade secret or other confidential research, development, or commercial information.' Fed. R. Civ. P. 26(c)(1)(G). The Ninth Circuit adopted the definition of "trade secrets" set forth in the Restatement of Torts, finding that '[a] trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.'" *Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*, 345 F. Supp. 3d 1111, 1120 (N.D. Cal. 2018) (citing *Clark v. Bunker*, 453 F.2d 1006, 1009 (9th Cir. 1972)).

Good cause exists to file NOA's information under seal because the information consists of NOA's confidential information, the disclosure of which would cause competitive injury. Courts have found disclosure of confidential information that could harm a party's competitive standing to be a compelling reason – a standard *higher* than the one required here – to seal exhibits. *See Snapkeys, Ltd. v. Google LLC*, 2021 WL 1951250, at *3 (N.D. Cal. May 14, 2021). Special consideration should be taken since these depositions were taken under the Protective Order of the FTC's Administrative Law Judge. *See Finisar Corp. v. Nistica, Inc.*, 2015 WL 3988132, at *4 (N.D. Cal. June 30, 2015) (granting motion to seal for transcripts designated Highly Confidential-Attorneys' Eyes Only pursuant to a Stipulated Protective Order because

testimony contained confidential, trade secret, and proprietary information related to products and business practices).

The designations referenced above contain NOA's confidential business information, which the courts in this district have defined broadly.  *See In re Qualcomm Antitrust Litig.*, 2022 WL 4137580, at *2 (N.D. Cal. Aug. 26, 2022) ("'confidential business information' in the form of 'license agreements, financial terms, details of confidential licensing negotiations, and business strategies' satisfies the 'compelling reasons' standard."); *Arista Networks, Inc. v. Cisco Sys.*, 2017 WL 6043303, at *3-4 (N.D. Cal. Nov. 28, 2017) (finding that disclosure of internal assessments of products and development strategies would result in competitive harm and thus the information is sealable); *Lenovo (United States) Inc. v. IPCom GmbH & Co., KG*, 2022 WL 2313948, at *2 (N.D. Cal. June 28, 2022) (ruling that there are compelling reasons to seal information relating to the specific details and substance of licensing negotiations); *Am. Automobile Ass'n of N. Cal., Nev., & Utah*, 2019 WL 1206748, at *2 (N.D. Cal. Mar. 14, 2019) (finding compelling reasons to seal personally identifiable information, "including names, addresses, phone numbers, and email addresses"); *Hadley v. Kellogg Sales Co.*, 2018 U.S. Dist. LEXIS 224314, 2018 WL 7814785, at *2 (N.D. Cal. Sept. 5, 2018) (finding "compelling reasons" to seal information providing insight into "business strategies and internal decision making").

When the public release of documents could give competitors an unfair advantage in the development or marketing of rival products, courts have sealed those documents.  *Exeltis USA Inc. v. First Databank, Inc.*, 2020 WL 2838812, at *2 (N.D. Cal. June 1, 2020).  Here, public disclosure of this information would provide Nintendo's competitors with confidential data such as Nintendo's business operations, strategic thinking, competitive analyses, product development, and third-party negotiations. The resulting competitive harm would be immense and therefore the harm cannot be avoided through less restrictive alternatives.

## IV.   CONCLUSION

For the foregoing reasons, Non-Party NOA respectfully request the Court to keep sealed Plaintiff's exhibits PX7059 and PX7065 or, at minimum, direct that only copies of those exhibits

1 | with the redactions indicated above shall be placed in the public record, and that the Court view
2 | and listen to the corresponding videorecorded testimony *in camera* only.
3 | Dated: June 26, 2023                          VENABLE LLP

By:     /s/ *Steven E. Swaney*
        Steven E. Swaney
        Leonard L. Gordon (pro hac vice)
        Benjamin P. Argyle (pro hac vice)
Attorneys for Non-Party Nintendo of America Inc.