**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

**FEDERAL TRADE COMMISSION**,

    Plaintiff,

    v.

**MICROSOFT CORP.,**

and

**ACTIVISION BLIZZARD, INC.,**

    Defendants.

Case No.  3:23-cv-02880

**JOINT STIPULATION AND [PROPOSED] ORDER**

1  WHEREAS, Plaintiff Federal Trade Commission ("FTC") has identified Microsoft employee Lori Wright as a witness the FTC intends to call in the evidentiary hearing of this matter;

WHEREAS, Ms. Wright has previously testified in *Epic Games, Inc. v. Apple, Inc.*, Case No. 4:20-cv-05640-YGR (N.D. Cal.) on many of the same subjects as to which she would be expected to testify in this matter;

NOW, THEREFORE, Plaintiff FTC and Defendants Microsoft Corporation ("Microsoft") and Activision Blizzard, Inc. ("Activision") hereby jointly agree and stipulate to the following and respectfully move the Court to admit these stipulated facts into evidence in this matter:

1. Lori Wright is the Corporate Vice President of Gaming Ecosystem Partners of Defendant Microsoft Corporation.

2. Ms. Wright testified as a fact witness at the trial of *Epic Games, Inc. v. Apple, Inc.*, Case No. 4:20-cv-05640-YGR (N.D. Cal.). On May 10, 2021, Epic Games called Ms. Wright to testify at trial in the *Epic Games* case. *See* Trial Tr., (Dkt. 621), *Epic Games, Inc. v. Apple, Inc.,* Case No. 4:20-cv-05640-YGR (N.D. Cal. May 10, 2021).

3. Plaintiff Federal Trade Commission has submitted a copy of the *Epic Games* trial transcript to this Court as PX6000.

4. Pursuant to Local Rule 7-12 and this Stipulation, the following excerpts of Ms. Wright's prior trial testimony in *Epic Games* are to be admitted as evidence in this matter in lieu of the Court receiving live testimony from Ms. Wright in this evidentiary hearing:

| PX6000 Trial Transcript Citation | Testimony |
|---|---|
| Trial Tr. 534:6-9 | **Q.** In your job, have you gained an understanding of Microsoft's Xbox console business?<br><br>**A.** I do have an understanding of it. I'm not directly responsible for the console business. |
| Trial Tr. 536:9-537:3 | Q. If a user only owned an Xbox and not a smartphone, could the user do any of the |

| | |
|---|---|
| | things I just asked you about: Take a picture, order an Uber, get driving directions? |
| | A. They could not. |
| | Q. To be clear, does the Xbox console have a battery? |
| | A. No. |
| | Q. Does it have a screen? |
| | A. No. |
| | Q. How do you see the games? |
| | A. You have to plug it into a monitor or a PC, some display screen. |
| | Q. Does the Xbox have speakers? |
| | A. It does not. |
| | Q. How do you hear the games? |
| | A. Through the display device or auxiliary sound. |
| | Q. Does the Xbox have touchscreen functionality to control the games? |
| | A. The Xbox console does not have touch controls. |
| | Q. How do you control the games? |
| | A. Through a controller. |
| Trial Tr. 537:14-21 | Q. What products, if any, compete with the Xbox console for hardware sales? |
| | A. The most direct competitor for hardware sales would be the Sony PlayStation. |
| | Q. Are there any others? |

| | |
|---|---|
| | A. There is the Nintendo Switch but to a much lesser extent.

Q. Any others?

A. No. |
| Trial Tr. at 539:2-540:9 | Q. And is there -- do you have a name for the type of games that are typically developed for Xbox consoles?

A. In its broadest sense, there are AAA games which are kind of major blockbuster titles that get built for the Xbox or individual developers who build games to be played. You know, we typically refer to them just as console games.

Q. And can you -- well, can you compare AAA or console games to games that are available and written for mobile devices?

A. For the most part, no. Mobile device games are typically more casual. They're -- the vast majority are free to play and then have in-app purchase mechanisms as part of them. So there are certainly exceptions where a game can be played – a different version of the game but the same title can be played on mobile and console. But, no, it is -- as a majority rule, no.

Q. Can you just describe the characteristics of what you call AAA games or console quality games?

A. These are games that, you know, have been – the developers have taken a design choice to build an experience that they want to have rendered on, you know -- with all the compute power, graphic fidelity, that this box provides. And so there are a lot of immersive games, you know, very, you know, thoughtful, long storyline games that are traditionally the type of games that we have on console. |

| | | |
|---|---|---|
| 1 | | Q. And relative to games that are designed for iOS, how do those games compare in terms of the computing power required to run them? |
| 2 | | |
| 3 | | A. They're just much, much larger size games. Like, you know, 150 gig, 250, 450 gigabyte games. These are massive game size files that run on the console. And so they take a lot of graphics intensity and all sorts of other technical requirements in order to render that experience on a console, and you can't just move that over to an iPhone. |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | Trial Tr. 540:21-541:21 | Q. And are there some games that by the very nature of there [sic] size and complexity cannot be even recoded to run on mobile once they've been designed for Xbox? |
| 9 | | |
| 10 | | |
| 11 | | A. Yes. |
| 12 | | Q. Can you give me -- can you give me an example? |
| 13 | | A. Halo. |
| 14 | | |
| 15 | | Q. What is Halo? |
| 16 | | A. Halo is a game that is developed by our -- by Microsoft Studios, and it is a game that cannot run -- that has been built for the console. A large game. It could not run on mobile. |
| 17 | | |
| 18 | | |
| 19 | | Q. Approximately how many gigabytes are required to download the game Halo? |
| 20 | | |
| 21 | | A. I haven't looked. I think it's some -- if I remember, I think it's about 150 gigabytes. |
| 22 | | |
| 23 | | Q. And what is the typical download size supported by an iOS device? |
| 24 | | |
| 25 | | A. I think the biggest games are in the 3-to-4 gigabyte range with an average of 35, 45 meg, if I remember correctly. |
| 26 | | |
| 27 | | |
| 28 | | |

| | |
|---|---|
| | Q. So roughly Halo is 50 times too large to run on iOS?<br><br>A. Yeah.<br><br>Q. Are there other examples like Halo that are too big or too intensive to run natively on iOS?<br><br>A. A lot of -- many, many of our titles would either consume the entire storage capacity or not run at all on those, so, you know, we have a long list of titles. |
| Trial Tr. 542:23-543:7 | THE COURT: Ms. Wright, while he is getting that, let me ask, do you -- how many of the games are developed by your in-house Microsoft folks versus third parties?<br><br>THE WITNESS: That's a great question. I don't know the exact split. I would venture a guess, and that would be probably there is roughly 3500 games in -- that we play on an Xbox and there are probably I would say less than a hundred that are developed by Microsoft.<br><br>THE COURT: Okay. So principally third party?<br><br>THE WITNESS: Yes. |
| Trial Tr. 548:5-20 | Q. In your role in business development at Xbox, do you have a preference for whether a potential user buys a game on iOS, or are you agnostic as to whether that user buys a game on iOS?<br><br>A. I -- given that they're not many at all of our games that run on iOS that are competing games, then we don't -- we're agnostic. If you want to buy a game on iOS, wonderful.<br><br>Q. And how does that compare to whether a user buys a game on the PlayStation? |

5

| | |
|---|---|
| | A. I think if you've made a choice to buy a game on -- if you made a choice to buy a PlayStation, then you're buying games from Sony. That is taking away from you being an owner of an Xbox for the most part and buying games through the Xbox Store.<br><br>Q. And that's different from iOS?<br><br>A. It is. Sony is our direct competitor. |
| Trial Tr. 551:24-552:13 | Q. Does Microsoft -- how much margin does Microsoft earn on the sale of the Xbox consoles?<br><br>A. We don't. We sell the consoles at a loss. We subsidize every console.<br><br>Q. If Microsoft sells hardware consoles at a loss, why does Microsoft keep selling them?<br><br>A. Because our business model is set up so that we can deliver an end-to-end gaming experience. The hardware is critical to us delivering that gaming experience, and therefore we know we need to -- for gamers to be able to have a console. And we subsidize that and then we make money over the long run on the game sales or the game subscriptions.<br><br>Q. Just to be clear, does Microsoft ever earn a profit on the sale of an Xbox console.<br><br>A. No. |
| Trial Tr. 566:6-21 | Q. Why did Microsoft -- well, step back. What did Microsoft have to do to develop the xCloud product?<br><br>A. We had to effectively go and use -- find data centers around the world that were already, you know -- as part of our Azure operations. We went into many of our existing data centers, but we had to go and a way that it's architected, which I'm a little bit cautious about -- talking about here publicly – |

| | | |
|---|---|---|
| 1 | | Q. Yeah. We don't need specifically. Just generally what were the steps that had to be taken? |
| 2 | | |
| 3 | | |
| 4 | | A. We had to find data centers, make it capable through hardware and equipment for those games to be run natively out of those data centers, and then we, you know, effectively had to make our global streaming stack, update our client, you know, do all the sorts of things that would be necessary in order to deliver those games over the internet. |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | Trial Tr. 581:8-10 | Q. And so you don't think about competition among -- with respect to the Xbox; is that right?

A. It's not part of my core job. |
| 9 | | |
| 10 | | |
| 11 | Trial Tr. 611:12-20 | Q. And that surprises me because this is a project obviously you have been working on for a long time. You haven't bothered to look at what the public is saying about this service?

A. My focus shifted elsewhere after we hit the impasse on the App Store, and, like, I still am very much looking at the -- the overall gaming business, but I am not as close to xCloud as I once was based off of an expanded scope of things I'm looking at. |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | Trial Tr. 611:21-612:23 | Q. Okay. And so you're not aware that, among other things, press reviews have said the xCloud gaming service -- sorry -- the xCloud gaming is already a super-solid experience on PC and iOS. Have you heard that?

A. Yes. I've seen some press headlines that are very positive on it, that's for sure.

Q. Do you disagree with that?

A. No.

Q. Have you heard that "The overall performance of every game I tried on the |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

7

| | |
|---|---|
| | Xbox" -- "xCloud streaming platform was smooth and stable"?<br><br>A. Nope. But I believe -- yeah, that could have certainly been the experience.<br><br>Q. You agree with it?<br><br>A. Sure.<br><br>Q. Have you heard that even the beta -- it was described as "a remarkably polished one"? Does that surprise you?<br><br>A. No. But you have to remember what we had to go do. We had to go buy professional license rights to a company in order to give us certain protocols to help with this. We had to rewrite the entire front end, so a lot of this is work that we had to go do to deliver that polished.<br><br>Q. Certainly. You had to expand your resources to deliver a good product; right?<br><br>A. To -- yes.<br><br>Q. That's the gaming world, isn't it?<br><br>A. To deliver this product in this way, we had to start from scratch and deliver it, yes. |
| Trial Tr. 633:5-11 | Q. And AAA -- would you include *Fortnite* as a AAA game?<br><br>A. There is, I think, varying definitions of what an AAA game is. I think *Fortnite* started as an independent game, grew into what is inarguably an AAA game so, yes.<br><br>Q. Is that a "yes"?<br><br>A. Yes. But there is differing standards, but, yes. We will call it an AAA game. |
| Trial Tr. 657:4-11 | **THE COURT:** All right. 5532 is admitted.<br>(Defense Exhibit 5532 received in evidence) |

8

| | |
|---|---|
| | **THE COURT:** Now you can read it.<br><br>**BY MR. EARNHARDT:**<br>**Q.** I want to read you the sentence that you didn't read. It reads, "Our gaming platform competes with console platforms for Nintendo and Sony."<br><br>**A.** Correct. |

The parties further agree that RX 1245, an agreement under which Microsoft would place Activision Blizzard and other games on Nware, which Ms. Wright signed and which Ms. Bond testified about earlier in this proceeding, *see* 6/22/23 Trial Tr. at 183:17-184:6, is hereby admitted into the record in lieu of live testimony in this evidentiary hearing.

PURSUANT TO STIPULATION, IT IS SO ORDERED: The above excerpts of Ms. Wright's trial testimony in *Epic Games, Inc. v. Apple, Inc.*, Case No. 4:20-cv-05640-YGR (N.D. Cal.), and RX 1245 are admitted into the record of *Fed. Trade Comm'n v. Microsoft*, Case No. 3:23-cv-02880 (N.D. Cal.).

Dated: _____, 2023

                                                                               Honorable Jacqueline Scott Corley
                                                                               United States District Judge
                                                                               Northern District of California

Dated:  June 26, 2023                                    Respectfully submitted,

                                                                             */s/ James H. Weingarten*
                                                                              James H. Weingarten
                                                                              Peggy Bayer Femenella
                                                                              James Abell
                                                                              Cem Akleman
                                                                              J. Alexander Ansaldo
                                                                              Michael T. Blevins
                                                                              Amanda L. Butler
                                                                              Nicole Callan
                                                                              Maria Cirincione
                                                                              Kassandra DiPietro
                                                                              Jennifer Fleury
                                                                              Michael A. Franchak
                                                                              James Gossmann
                                                                              Ethan Gurwitz

Meredith R. Levert
David E. Morris
Merrick Pastore
Stephen Santulli
Edmund Saw

Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Telephone: (202) 326-3570

*Counsel for Plaintiff Federal Trade Commission*

*/s/ Beth Wilkinson*
Beth Wilkinson (pro hac vice)
Rakesh N. Kilaru (pro hac vice)
Kieran Gostin (pro hac vice)
Grace Hill (pro hac vice)
Anastasia M. Pastan (pro hac vice)
Sarah E. Neuman (pro hac vice)
Alysha Bohanon (pro hac vice)
Jenna Pavelec (pro hac vice)
WILKINSON STEKLOFF LLP
2001 M Street, N.W., 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000

Jonathan E. Nuechterlein (pro hac vice)
C. Frederick Beckner III (pro hac vice)
William R. Levi (pro hac vice)
Daniel J. Hay (pro hac vice)
SIDLEY AUSTIN LLP
150 K Street, N.W.
Washington, DC 20005

Bambo Obaro (Bar No. 267683)
WEIL, GOTSHAL &MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3083

Michael Moiseyev (pro hac vice)
Megan A. Granger (pro hac vice)
WEIL, GOTSHAL &MANGES LLP
2001 M Street, N.W., Suite 600
Washington, DC 20036
Telephone: (202) 682-7000

*Counsel for Defendant Microsoft Corporation*

*/s/ Jack DiCanio*
Jack DiCanio (Bar No. 138782)

Caroline Van Ness (Bar No. 281675)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, CA 94301
Telephone: (650) 470-4500

Steven C. Sunshine (*pro hac vice*)
Julia K. York (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7000

Maria Raptis (*pro hac vice*)
Matthew M. Martino (*pro hac vice*)
Michael J. Sheerin (*pro hac vice*)
Evan R. Kreiner (*pro hac vice*)
Bradley J. Pierson (*pro hac vice*)
Jessica R. Watters((*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1 Manhattan West
New York, NY 10001
Telephone: (212) 735-3000

*Counsel for Defendant Activision Blizzard, Inc.*