# Exhibit B

Jack DiCanio (SBN 138782)
Caroline Van Ness (SBN 281675)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (213) 621-5430
Email: jack.dicanio@skadden.com
Email: caroline.vanness@skadden.com

Steven C. Sunshine (admitted *pro hac vice*)
Julia K. York (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005-2111
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
Email: steven.sunshine@skadden.com
Email: julia.york@skadden.com

*Attorneys for Defendant Activision Blizzard, Inc.*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICROSOFT CORP. and ACTIVISION<br>BLIZZARD, INC.,<br><br>　　　　Defendants. | CASE NO. 3:23-cv-02880-JSC<br><br>**DEFENDANT ACTIVISION BLIZZARD, INC.'S ANSWER AND AFFIRMATIVE DEFENSES**<br><br>Hon. Jacqueline Scott Corley |

1    **ANSWER AND AFFIRMATIVE DEFENSES OF ACTIVISION BLIZZARD, INC.**

2    Defendant Activision Blizzard, Inc. ("Activision"), by and through its undersigned attorneys,

3    hereby answers Plaintiff Federal Trade Commission's ("Plaintiff" or "FTC") Complaint for a

4    Temporary Restraining Order and Preliminary Injunction Pursuant to Section 13(b) of the Federal

5    Trade Commission Act dated June 12, 2023 against Microsoft Corp. ("Microsoft") and Activision

6    (the "Complaint"), as follows.

7    **INTRODUCTION**

8    As multiple industry participants and antitrust regulators around the world have recognized,

9    this merger will benefit gamers, employees, and competition globally.  Having purposefully delayed

10   filing a complaint in federal court for more than six months after initiating an administrative

11   proceeding to block the merger, the FTC continues to ignore the real-world evidence and settled law

12   that squarely contradict its ideologically-fueled efforts.  The FTC's theory rests on the nonsensical

13   theory that, after acquiring Activision, Microsoft's Xbox division ("Xbox") will withhold or degrade

14   other gaming platforms' access to *Call of Duty* games.  But, in the real world, Xbox has committed

15   to making *Call of Duty* more widely available than ever before.  And, in any event, the FTC's idea

16   that a single game or franchise is the key to the continued competitive vigor of the highly dynamic

17   video game industry is facially absurd and contradicted by the plain facts.  Ultimately, the FTC asks

18   the Court to do something without any precedent in at least the last half-century: enjoin a vertical

19   merger under Section 13(b) of the FTC Act, thereby preventing the merger from continuing.

20   The FTC's case fails at the start because Xbox does not have the ability or incentive to

21   withhold *Call of Duty* from its competitors.  It would be economically irrational for Xbox to withhold

22   *Call of Duty* from its competitors, and regardless, Xbox *cannot* do so.  After agreeing to acquire

23   Activision, Microsoft has entered into agreements to bring *Call of Duty* to Nintendo (which has not

24   had *Call of Duty* on its consoles for over a decade) and to five leading cloud gaming services (which

25   Activision has consistently refused to do) for ten years.  It has made the same offer to Sony—which

26   is guaranteed access to *Call of Duty* through at least 2024 under its currently-operative agreements—

27   committing to the public, its shareholders, and now to the Court that it will continue to sell *Call of*

28   *Duty* on Sony's PlayStation.  But Sony has refused to accept.

1    Even if Microsoft somehow had both the incentive and the ability to withhold *Call of Duty*

2  from Sony, doing so would not constitute a "substantial lessening of competition."  The acquisition

3  of a single game by the third-place (out of three) console manufacturers cannot upend this highly

4  competitive industry.  Exclusive titles are a common method by which gaming platforms compete,

5  and Sony and Nintendo both have vastly larger libraries of exclusive content than Xbox.  Moreover,

6  *Call of Duty* is not essential content for any platform, and the vast majority of gamers do not even

7  play *Call of Duty* at all.

8    The FTC's theory of harm to the putative markets for subscription library and cloud gaming

9  services is even weaker.  Neither service is a standalone market but rather an emerging alternative to

10  existing products in the gaming industry.  Currently, Activision content is generally not available

11  either on subscription libraries or on cloud platforms, and Activision has no intention to make them

12  available for an array of technological and financial reasons.  Microsoft, by contrast, has entered

13  binding contracts to bring Activision content to its own subscription library and to third-party cloud

14  gaming platforms.  Thus, the undisputed evidence will show that, across every putative market

15  identified by the FTC, the result of the merger will be output *enhancing*, meaning broader access to

16  Activision content and more competition.

17    Ultimately, the FTC has no grounds to challenge this merger, which will increase competition

18  and expand access across multiple sectors of the gaming market.  The FTC's request for injunctive

19  relief should be denied.

20                                              **ANSWER**

21    Each numbered paragraph below corresponds to the same-numbered paragraph in the

22  Complaint.  All allegations not expressly admitted herein are denied.  Use of headings and

23  subheadings from the Complaint is solely for the benefit of the reader.  Activision does not interpret

24  the headings and subheadings throughout the Complaint as well-pleaded allegations to which any

25  response is required.  To the extent such a response is required, Activision denies all allegations of

26  the headings and subheadings of the Complaint.

27    Further, use of certain terms or phrases defined in the Complaint is not an acknowledgement

28  or admission of any characterization the FTC may ascribe to the defined terms.  Unless otherwise

defined, capitalized terms shall refer to the capitalized terms defined in the Complaint, but any such use is not an acknowledgment or admission of any characterization the FTC may ascribe to the defined terms. Activision additionally does not concede the truthfulness of third-party articles and news sources quoted or referenced in the Complaint. To the extent that a response is required, Activision denies all allegations of the third-party articles and news sources quoted in or referenced in the Complaint.

The FTC's unnumbered introductory paragraph characterizes this action and asserts legal arguments and conclusions to which no response is required. To the extent such a response is required, Activision denies the allegations of the FTC's unnumbered introductory paragraph. Activision additionally denies that the FTC is entitled to any of the relief sought in the prayer for relief on pages 32–33 of the Complaint.

Activision reserves the right to amend and/or supplement this answer at a later stage of the proceedings, as permitted by the Federal Rules of Civil Procedure.

## NATURE OF THE CASE

1.     Activision denies the allegations of the first, second, third, and fifth sentences of Paragraph 1, except to admit that Microsoft proposes to acquire Activision in a vertical merger that is currently valued at approximately $68.7 billion. As to the allegations of the second sentence of Paragraph 1, Activision specifically denies that only a small group of firms are capable of developing standout video games for video game consoles. On the contrary, many video game companies other than Microsoft and Activision have published and/or developed highly anticipated and financially successful video games over the past 20 years. The barriers to developing a standout game are low, as there are numerous examples of standout games developed by small and even new studios with tiny budgets and just a small number of developers. Activision lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the fourth sentence of Paragraph 1 and denies them on that basis. The remaining allegations of Paragraph 1 set forth legal arguments and conclusions to which no response is required. To the extent a response is required, Activision denies the remaining allegations of Paragraph 1.

2.      Activision denies the allegations of the first sentence of Paragraph 2, except to admit that Microsoft develops and sells Xbox video game consoles.  Activision lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 2 and denies them on that basis, except to admit that Microsoft develops and publishes video game titles such as titles in the *Halo* franchise, that Microsoft offers a video game subscription service through Xbox Game Pass, and that the Xbox Game Pass Ultimate tier of that service includes a "cloud gaming" feature, which aims to enable subscribers to stream certain games across devices such as PCs, tablets, and mobile phones.

3.      Activision denies the allegations of Paragraph 3, except to admit that Activision develops and publishes high-quality video games for multiple devices (including video game consoles, PCs, and mobile devices), including games that some industry participants refer to as "AAA"—a subjective term that is not defined by any industry consensus.

4.      Activision denies the allegations of Paragraph 4, except to admit that Activision develops *Diablo*, *Overwatch*, and *Call of Duty* video game titles.

5.      Activision denies the allegations of the first, second, and third sentences of Paragraph 5, except to admit that *Diablo* and *Overwatch* video game titles, among other Activision video game titles, have earned more than $1 billion in lifetime revenues, that *Overwatch 2* was released in 2022 and is available to play on Microsoft's Xbox Series X and Series S consoles (together, "Xbox Series X|S"), Nintendo Switch, Sony PlayStation 5, and PCs, that *Diablo* has been active since the 1990s—including the releases of *Diablo II Resurrected* on the Xbox Series X|S, Nintendo Switch, PlayStations 4 and 5, and PCs, and *Diablo III* on the Xbox One, PlayStation 4, Nintendo Switch, and PCs—and that *Diablo IV* was released on June 6, 2023.  Activision admits that the fourth and fifth sentences of Paragraph 5 purport to quote from one or more unidentified sources.  Activision refers to any such source, to the extent it exists, for its contents and context and denies any characterization thereof.

6.      To the extent the allegations of the first sentence of Paragraph 6 refer to Activision, Activision admits that it recognizes that *Call of Duty* is one of its "key product franchises" with respect to its own overall business, along with *Candy Crush* and *Warcraft*.  To the extent the

allegations of the first sentence of Paragraph 6 concern parties other than Activision, Activision lacks knowledge or information sufficient to form a belief as to their truth and denies them on that basis. Activision denies the allegations of the second sentence of Paragraph 6, except to admit that it released the first entry in the *Call of Duty* franchise in 2003 and that it has released annual premium content in the *Call of Duty* franchise since 2003.  Activision lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the third sentence of Paragraph 6 and denies them on that basis, including because the term "substantial resources" is vague and undefined. To the extent the allegations of the fourth sentence of Paragraph 6 refer to Activision, Activision denies them, except to admit that more than one Activision studio is generally working on a given entry in the *Call of Duty* franchise at the same time.  To the extent the allegations of the fourth sentence of Paragraph 6 concern parties other than Activision, Activision lacks knowledge or information sufficient to form a belief as to their truth and denies them on that basis.

7.     Activision denies the allegations of the first, second, and third sentences of Paragraph 7, except to admit that *Call of Duty* is a successful game franchise, that the first entry in the *Call of Duty* franchise launched in 2003, and that the *Call of Duty* franchise generated approximately $27 billion in revenue from 2003 through 2020.  Activision admits that the fourth sentence of Paragraph 7 purports to reference an internal Activision strategy document.  Activision refers to that document, to the extent it exists, for its contents and context and denies any characterization thereof, including because the FTC's reference to ▮▮▮▮▮▮ *Call of Duty* monthly active users is inaccurate and misleading.  The FTC also fails to acknowledge ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Activision denies the remaining allegations of Paragraph 7, except to admit that *Call of Duty: Black Ops II* was released on November 12, 2012 and grossed $1 billion in retail sales within 15 days of its release, and that *Call of Duty: Modern Warfare II* was released on October 28, 2022 and grossed $1 billion in retail sales within 10 days of its release.

8.     To the extent the allegations of the first sentence of Paragraph 8 suggest that Activision's content is "extremely important for" video game consoles, Activision lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of

1  Paragraph 8 and denies them on that basis, including because the phrase "extremely important for"
2  is vague and undefined.  Activision otherwise denies the allegations of Paragraph 8, including
3  because there is no evidence to suggest that Activision's content drives adoption of video game
4  consoles or video game platforms more generally.  For example, Activision has not released any *Call*
5  *of Duty* titles on Nintendo's Switch video game console, yet the Switch has experienced widespread
6  success.  As an additional example, Activision made *Call of Duty* for PC exclusive to its Battle.net
7  platform from 2018 to 2022, and during that period, ▮▮▮▮▮▮▮▮.  Meanwhile, Valve's Steam
8  platform continued to thrive during that period, growing from 90 million monthly active users in
9  2018 to over 120 million in 2022.

10      9.      Activision admits the allegations of the first sentence of Paragraph 9.  Activision lacks
11  knowledge or information sufficient to form a belief as to the truth of the remaining allegations of
12  Paragraph 9 and denies them on that basis.

13      10.     Paragraph 10 sets forth legal arguments and conclusions to which no response is
14  required.  To the extent a response is required, Activision denies the allegations of Paragraph 10.

15      11.     Activision denies the allegations of Paragraph 11.

16      12.     Activision lacks knowledge or information sufficient to form a belief as to the truth
17  of the allegations of Paragraph 12 and denies them on that basis, except to admit that Microsoft
18  acquired ZeniMax Media Inc. ("ZeniMax") in March 2021, that ZeniMax is the parent company of
19  a game developer, and that Microsoft has publicly announced that it may make some future single-
20  player ZeniMax games exclusive to Xbox and PC when they are initially released.

21      13.     Activision admits that the first sentence of Paragraph 13 purports to quote from one
22  or more unidentified sources.  Activision refers to any such source, to the extent it exists, for its
23  contents and context and denies any characterization thereof.  Activision denies the allegations of
24  the second sentence of Paragraph 13, except to admit that Activision has financial, reputational, and
25  other incentives to offer its titles broadly across multiple platforms because doing so drives user
26  adoption of Activision's products and user engagement with those products, which in turn also
27  improves the user experience on those games, and that those financial, reputational, and other
28  incentives will remain regardless of who owns Activision's content.  The remaining allegations of

Paragraph 13 set forth legal arguments and conclusions to which no response is required.  To the extent a response is required, Activision denies the remaining allegations of Paragraph 13.

14.     Paragraph 14 sets forth legal arguments and conclusions to which no response is required.  To the extent a response is required, Activision denies the allegations of Paragraph 14.

15.     Paragraph 15 sets forth legal arguments and conclusions to which no response is required.  To the extent a response is required, Activision denies the allegations of Paragraph 15.

16.     Paragraph 16 sets forth legal arguments and conclusions to which no response is required.  To the extent a response is required, Activision denies the allegations of Paragraph 16, except to admit that the FTC commenced an administrative proceeding against Microsoft in December 2022, that fact discovery closed in April 2023, and that an evidentiary hearing is scheduled to begin in August 2023.

17.     Paragraph 17 sets forth legal arguments and conclusions to which no response is required.  To the extent a response is required, Activision denies the allegations of Paragraph 17.

18.     Paragraph 18 sets forth legal arguments and conclusions to which no response is required.  To the extent a response is required, Activision denies the allegations of Paragraph 18.

## JURISDICTIONAL STATEMENT

19.     Paragraph 19 sets forth legal arguments and conclusions to which no response is required.

20.     Paragraph 20 sets forth legal arguments and conclusions to which no response is required.

21.     Paragraph 21 sets forth legal arguments and conclusions to which no response is required.

22.     Paragraph 22 sets forth legal arguments and conclusions to which no response is required.  To the extent a response is required, Activision denies the allegations of Paragraph 22.

23.     Paragraph 23 sets forth legal arguments and conclusions to which no response is required.

## THE PARTIES AND THE PROPOSED ACQUISITION

1    24.     Paragraph 24 sets forth legal arguments and conclusions to which no response is

2  required.  To the extent a response is required, Activision lacks knowledge or information sufficient

3  to form a belief as to the allegations of Paragraph 24 and denies them on that basis, except to admit

4  that the FTC is an administrative agency of the United States.

5    25.     Activision lacks knowledge or information sufficient to form a belief as to the

6  allegations of Paragraph 25 and denies them on that basis, except to admit that Microsoft is a publicly

7  traded technology company that is incorporated in the State of Washington and headquartered in

8  Redmond, Washington.

9    26.     Activision admits the allegations of Paragraph 26.

10    27.     Activision admits the allegations of Paragraph 27.

11    28.     Paragraph 28 sets forth legal arguments and conclusions to which no response is

12  required.  To the extent a response is required, Activision denies the allegations of Paragraph 28.

13                                            **BACKGROUND**

14    29.     Activision denies the allegations of the first sentence of Paragraph 29.  The second

15  sentence of Paragraph 29 sets forth legal arguments and conclusions to which no response is required.

16  To the extent a response is required, Activision denies the allegations of the second sentence of

17  Paragraph 29.

18    30.     Activision lacks knowledge or information sufficient to form a belief as to the

19  allegations of Paragraph 30 and denies them on that basis.

20    31.     Activision denies the allegations of the first sentence of Paragraph 31, except to admit

21  that the popularity of gaming is expected to continue, particularly on mobile devices.  Activision

22  lacks knowledge or information sufficient to form a belief as to the allegations of the second and

23  third sentences of Paragraph 31 and denies them on that basis.

24    32.     Activision denies the allegations of Paragraph 32, except to admit that video game

25  content can be played on a variety of devices.

26    33.     Activision lacks knowledge or information sufficient to form a belief as to the

27  allegations of Paragraph 33 and denies them on that basis, except to admit that consumers consider

28  a variety of factors in deciding whether to purchase a specific video game console.

34.     Activision denies the allegations of Paragraph 34, except to admit that Microsoft, Sony, and Nintendo have each manufactured video game consoles for over two decades and that they currently manufacture the Xbox Series X|S, PlayStation 5, and Switch video game consoles, respectively.

35.     Activision denies the allegations of Paragraph 35, except to admit that video game console makers have periodically released new video game consoles since the 1970s and that there has been vigorous competition in the gaming industry for decades, including competition among video game console makers.

36.     Activision denies the allegations of Paragraph 36, except to admit that Microsoft, Sony, and Nintendo all currently offer competing gaming consoles, that Microsoft launched the Xbox Series X and Series S consoles in November 2020, that Sony launched the PlayStation 5 and PlayStation 5 Digital Edition consoles in November 2020, and that Nintendo launched the Switch console in March 2017.

37.     Activision denies the allegations of the first sentence of Paragraph 37, except to admit that the Xbox Series X|S are two Xbox consoles offered by Microsoft.  Activision lacks knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 37 and denies them on that basis.

38.     Activision lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 38 and denies them on that basis.

39.     Activision lacks knowledge or information sufficient to form a belief as to the allegations of the first sentence of Paragraph 39 and denies them on that basis.  Activision admits that the second sentence of Paragraph 39 purports to quote from one or more sources.  Activision refers to any such source, to the extent it exists, for its contents and context and denies any characterization thereof.

40.     Activision admits that the first sentence of Paragraph 40 purports to quote from one or more unidentified sources.  Activision refers to any such source, to the extent it exists, for its contents and context and denies any characterization thereof.  Activision otherwise lacks knowledge or information sufficient to form a belief as to the allegations of the first sentence of Paragraph 40

DEFENDANT ACTIVISION'S ANSWER AND AFFIRMATIVE DEFENSES          Case No. 3:23-cv-02880-JSC

1  and denies them on that basis.  Activision lacks knowledge or information sufficient to form a belief

2  as to the allegations of the second sentence of Paragraph 40 and denies them on that basis.

3      41.  Activision lacks knowledge or information sufficient to form a belief as to the

4  allegations of Paragraph 41 and denies them on that basis, except to admit that the Nintendo Switch

5  allows portable, handheld use and that the Xbox Series S provides gamers the ability to play the same

6  video games as the Xbox Series X.

7      42.  Activision lacks knowledge or information sufficient to form a belief as to the

8  allegations of Paragraph 42 and denies them on that basis, except to admit that, for the last several

9  decades, consumers have accessed video games by purchasing physical copies of such games and

10  that, presently, consumers can also access video games by downloading digital copies of such games

11  on their video game consoles, PC, or other devices.

12      43.  Activision lacks knowledge or information sufficient to form a belief as to the

13  allegations of Paragraph 43 and denies them on that basis, except to admit that certain companies in

14  the video game industry now offer multi-game subscription services that can take a variety of forms

15  but generally allow gamers to access a catalog of games for a fixed period of time, and that Microsoft

16  launched its own multi-game subscription service, Xbox Game Pass, in 2017.

17      44.  Activision lacks knowledge or information sufficient to form a belief as to the

18  allegations of Paragraph 44 and denies them on that basis, except to admit that Microsoft offers

19  subscription services to consumers that allow consumers to play a catalog of games through its Xbox

20  Game Pass service and that Microsoft also offers users a cloud gaming feature (*i.e.*, a feature that

21  aims to provide users the ability to stream games from an off-site server to certain web-enabled

22  devices) through the Xbox Game Pass Ultimate tier of its Xbox Game Pass service.

23      45.  Activision lacks knowledge or information sufficient to form a belief as to the

24  allegations of Paragraph 45 and denies them on that basis, except to admit that Sony offers a

25  subscription service that allows consumers to play a catalog of games through its PlayStation Plus

26  service and that Sony offers users a cloud gaming feature through its PlayStation Plus Premium

27  service.

28

46.     Activision lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 46 and denies them on that basis, except to admit that Electronic Arts Inc. ("EA") and Ubisoft Entertainment SA ("Ubisoft") each offer subscription services that allow consumers to play a catalog of games through their EA Play and Ubisoft+ services, respectively.

47.     Activision admits the allegations of the first sentence of Paragraph 47.  Activision denies the allegations of the second and third sentences of Paragraph 47, except to admit that cloud gaming technology can be used in certain circumstances to enable players to stream certain games that run on remote hardware without downloading the game locally, and that cloud gaming technology requires complex and demanding cloud computing communications, which, owing to the interactive nature of video games, is significantly more resource intensive than the streaming of video alone.

48.     Activision lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 48 and denies them on that basis.

49.     Activision lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 49 and denies them on that basis, except to admit that Microsoft offers users a cloud gaming feature through the Xbox Game Pass Ultimate tier of its Xbox Game Pass service.

50.     Activision lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 50 and denies them on that basis, except to admit that Amazon.com Inc. and Nvidia Corporation currently offer a cloud gaming feature through their Luna and GeForce NOW services, respectively, that Alphabet Inc. ("Google") previously offered a cloud gaming feature through its Stadia service, and that Google announced that it discontinued its Stadia service in January 2023.

51.     Activision denies the allegations of the first two sentences of Paragraph 51. Activision lacks knowledge or information sufficient to form a belief as to the allegations of the third and fourth sentences of Paragraph 51 and denies them on that basis.

52.     Activision lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 52 and denies them on that basis.

53.     Activision denies the allegations of Paragraph 53.

54.     Activision denies the allegations of Paragraph 54, except to admit that Activision, EA, Take-Two Interactive Software, Inc. ("Take-Two"), and Ubisoft are video game publishers and that Activision publishes video game titles in the *Call of Duty* franchise, EA publishes video game titles in the *FIFA* franchise, Take-Two publishes video game titles in the *Grand Theft Auto* franchise, and Ubisoft publishes video game titles in the *Assassin's Creed* franchise.

55.     Activision denies the allegations of the first sentence of Paragraph 55.  Activision lacks knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 55 and denies them on that basis, except to admit that Epic Games is the maker of *Fortnite*, a free-to-play game that is available in the United States and other parts of the world on Microsoft Xbox Series X|S, Nintendo Switch, Sony PlayStation 5, PCs, and other devices.

56.     Activision lacks knowledge or information sufficient to form a belief as to the allegations of the first and second sentences of Paragraph 56 and denies them on that basis. Activision denies the allegations of the third sentence of Paragraph 56.

57.     Activision denies the allegations of Paragraph 57, except to admit that Microsoft publishes games in the *Elder Scrolls*, *Halo*, and *Forza* franchises and that Sony publishes games in the *God of War*, *MLB The Show*, and *Spider-Man* franchises, among numerous others.

58.     Activision lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 58 and denies them on that basis, except to admit that *Halo Infinite* is a title from Microsoft's *Halo* franchise, and that Microsoft released *Halo Infinite* in November 2021.

59.     Activision lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 59 and denies them on that basis.

60.     Activision denies the allegations of the first sentence of Paragraph 60.  Activision lacks knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 60 and denies them on that basis.

61.     Activision denies the allegations of the first sentence of Paragraph 61, except to admit that gaming companies sometimes obtain licenses from third-party game developers to make certain games exclusive to their platform.  Activision lacks knowledge or information sufficient to form a

1    belief as to the truth of the allegations of the second and third sentences of Paragraph 61 and denies
2    them on that basis.

3        62.     Activision denies the allegations of the first, second, and fourth sentences of
4    Paragraph 62, except to admit that video game platforms sometimes reference the size of their player
5    base and many other factors in negotiations with publishers and developers.  Activision lacks
6    knowledge or information sufficient to form a belief as to the truth of the allegations of the third
7    sentence of Paragraph 62 and denies them on that basis.

8        63.     Activision lacks knowledge or information sufficient to form a belief as to the truth
9    of the allegations of Paragraph 63 and denies them on that basis.

10       64.     Activision lacks knowledge or information sufficient to form a belief as to the truth
11   of the allegations of Paragraph 64 and denies them on that basis.

12       65.     Activision denies the allegations of the first sentence of Paragraph 65, including
13   because the term "especially valuable" is vague and undefined.  Activision admits that the second
14   sentence of Paragraph 65 purports to quote from an investigational hearing.  Activision refers to the
15   source for its contents and context and denies any characterization thereof.  Activision lacks
16   knowledge or information sufficient to form a belief as to the truth of the allegations of the third
17   sentence of Paragraph 65 and denies them on that basis.

18       66.     Activision denies the allegations of the first and second sentences of Paragraph 66.
19   Activision admits that the third sentence of Paragraph 66 purports to quote from one or more
20   unidentified sources and/or documents.  Activision refers to any such source, to the extent it exists,
21   for its contents and context and denies any characterization thereof.

22       67.     Activision denies the allegations of the first sentence of Paragraph 67.  Activision
23   admits that the second sentence of Paragraph 67 purports to quote from one or more unidentified
24   sources.  Activision refers to any such source, to the extent it exists, for its contents and context and
25   denies any characterization thereof.  Activision lacks knowledge or information sufficient to form a
26   belief as to the truth of the allegations of the third sentence of Paragraph 67 and denies them on that
27   basis.  Activision admits the allegations of the fourth sentence of Paragraph 67.  Activision lacks
28

1  knowledge or information sufficient to form a belief as to the truth of the allegations of the fifth

2  sentence of Paragraph 67 and denies them on that basis.

3                              **THE RELEVANT ANTITRUST MARKETS**

4       68.     Paragraph 68 sets forth legal arguments and conclusions to which no response is

5  required.  To the extent a response is required, Activision denies the allegations of Paragraph 68,

6  except to admit that the merger will result in a combined firm.

7       69.     Paragraph 69 sets forth legal arguments and conclusions to which no response is

8  required.  To the extent a response is required, Activision denies the allegations of Paragraph 69.

9       70.     Paragraph 70 sets forth legal arguments and conclusions to which no response is

10 required.  To the extent a response is required, Activision denies the allegations of Paragraph 70.

11      71.     Paragraph 71 sets forth legal arguments and conclusions to which no response is

12 required.  To the extent a response is required, Activision denies the allegations of Paragraph 71.

13      72.     Paragraph 72 sets forth legal arguments and conclusions to which no response is

14 required.  To the extent a response is required, Activision denies the allegations of Paragraph 72.

15      73.     Activision denies the allegations of the first sentence of Paragraph 73.  The second

16 sentence of Paragraph 73 sets forth legal arguments and conclusions to which no response is required.

17 To the extent a response is required, Activision denies the allegations of the second sentence of

18 Paragraph 73.

19      74.     Activision lacks knowledge or information sufficient to form a belief as to the truth

20 of the allegations of Paragraph 74 and denies them on that basis, except to admit that Microsoft,

21 Sony, and Nintendo all currently offer competing video game consoles.

22      75.     Activision lacks knowledge or information sufficient to form a belief as to the truth

23 of the allegations of Paragraph 75 and denies them on that basis.

24      76.     Activision lacks knowledge or information sufficient to form a belief as to the truth

25 of the allegations of Paragraph 76 and denies them on that basis.

26      77.     Activision lacks knowledge or information sufficient to form a belief as to the truth

27 of the allegations of Paragraph 77 and denies them on that basis.

28

78.     Activision lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 78 and denies them on that basis.

79.     Activision lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 79 and denies them on that basis, except to admit that Microsoft launched the Xbox Series X and Series S consoles in November 2020, that Sony launched the PlayStation 5 and PlayStation 5 Digital Edition consoles in November 2020, and that Nintendo launched the Switch console in March 2017.

80.     Activision lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of Paragraph 80 and denies them on that basis.  Activision admits that the second sentence of Paragraph 80 purports to quote from one or more unidentified sources.  Activision refers to any such source, to the extent it exists, for its contents and context and denies any characterization thereof.

81.     Activision lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 81 and denies them on that basis, except to specifically deny any implication that Nintendo's hardware is reserved for or tends to be used more for "casual" or "family gaming," particularly given that Activision itself has published titles on Nintendo's Switch that could not plausibly be described as "casual" or "family" games.  These include titles in the *Overwatch* and *Diablo* franchises that feature "T for Teen" (for gamers aged 13 and up) and "M for Mature" (for gamers aged 17 and up) ratings, respectively, by the Entertainment Software Review Board.  Activision further denies that such distinctions are competitively relevant and denies any implication that Nintendo Switch appeals to a different gaming audience than Microsoft and Sony consoles; in fact, young adults aged 20 to 25 make up the largest share of the Switch's player demographic and adults well into their 40s make up a significant proportion of the Switch's user base.

82.     Activision lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 82 and denies them on that basis.

83.     Paragraph 83 sets forth legal arguments and conclusions to which no response is required.  To the extent a response is required, Activision denies the allegations of Paragraph 83.

84.     Activision denies the first and third sentences of Paragraph 84.  Activision lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the fourth sentence of Paragraph 84 and denies them on that basis.  The second and fifth sentences of Paragraph 84 set forth legal arguments and conclusions to which no response is required.  To the extent a response is required, Activision denies the allegations of the second and fifth sentences of Paragraph 84.

85.     Paragraph 85 sets forth legal arguments and conclusions to which no response is required.  To the extent a response is required, Activision denies the allegations of Paragraph 85.

86.     Paragraph 86 sets forth legal arguments and conclusions to which no response is required.  To the extent a response is required, Activision denies the allegations of Paragraph 86.

87.     Paragraph 87 sets forth legal arguments and conclusions to which no response is required.  To the extent a response is required, Activision denies the allegations of Paragraph 87.

88.     Activision lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 88 and denies them on that basis, except to admit that Microsoft offers subscription services to consumers that allow consumers to play a catalog of games through its Xbox Game Pass service and that Microsoft also offers users a cloud gaming feature through the Xbox Game Pass Ultimate tier of its Xbox Game Pass service.

89.     Activision lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 89 and denies them on that basis.

90.     Activision lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 90 and denies them on that basis.

91.     Activision lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 91 and denies them on that basis.

92.     The first sentence of Paragraph 92 sets forth legal arguments and conclusions to which no response is required.  To the extent a response is required, Activision denies the allegations of the first sentence of Paragraph 92.  Activision lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 92 and denies them on that basis.

1  93.   The first sentence of Paragraph 93 sets forth legal arguments and conclusions to which
2  no response is required.  To the extent a response is required, Activision denies the allegations of the
3  first sentence of Paragraph 93.  Activision lacks knowledge or information sufficient to form a belief
4  as to the truth of the remaining allegations of Paragraph 93 and denies them on that basis.

5  94.   The first sentence of Paragraph 94 sets forth legal arguments and conclusions to which
6  no response is required.  To the extent a response is required, Activision denies the allegations of the
7  first sentence of Paragraph 94.  Activision lacks knowledge or information sufficient to form a belief
8  as to the truth of the remaining allegations of Paragraph 94 and denies them on that basis.

9  95.   Paragraph 95 sets forth legal arguments and conclusions to which no response is
10  required.  To the extent a response is required, Activision denies the allegations of Paragraph 95.

11  96.   Paragraph 96 sets forth legal arguments and conclusions to which no response is
12  required.  To the extent a response is required, Activision denies the allegations of Paragraph 96.

13  97.   Paragraph 97 sets forth legal arguments and conclusions to which no response is
14  required.  To the extent a response is required, Activision denies the allegations of Paragraph 97.

15  98.   The first sentence of Paragraph 98 sets forth legal arguments and conclusions to which
16  no response is required.  To the extent a response is required, Activision denies the allegations of the
17  first sentence of Paragraph 98.  Activision lacks knowledge or information sufficient to form a belief
18  as to the truth of the remaining allegations of Paragraph 98 and denies them on that basis.

19  99.   Activision lacks knowledge or information sufficient to form a belief as to the truth
20  of the allegations of Paragraph 99 and denies them on that basis.

21  100.   Activision lacks knowledge or information sufficient to form a belief as to the truth
22  of the allegations of Paragraph 100 and denies them on that basis.

23  101.   Activision lacks knowledge or information sufficient to form a belief as to the truth
24  of the allegations of Paragraph 101 and denies them on that basis.

25  102.   Activision lacks knowledge or information sufficient to form a belief as to the truth
26  of the allegations of Paragraph 102 and denies them on that basis.

27  103.   Activision lacks knowledge or information sufficient to form a belief as to the truth
28  of the allegations of Paragraph 103 and denies them on that basis.

104.    Paragraph 104 sets forth legal arguments and conclusions to which no response is required.  To the extent a response is required, Activision denies the allegations of Paragraph 104.

105.    Paragraph 105 sets forth legal arguments and conclusions to which no response is required.  To the extent a response is required, Activision denies the allegations of Paragraph 105.

106.    Activision lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the first, third, fourth, and fifth sentences of Paragraph 106 and denies them on that basis.  To the extent the allegations of the second sentence of Paragraph 106 refer to Activision, Activision admits that the second sentence of Paragraph 106 purports to reference one or more unidentified Activision sources.  Activision refers to any such source, to the extent it exists, for its contents and context and denies any characterization thereof.  To the extent the allegations of the second sentence of Paragraph 106 concern parties other than Activision, Activision lacks knowledge or information sufficient to form a belief as to their truth and denies them on that basis.

107.    Activision lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 107 and denies them on that basis.

108.    Activision lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 108 and denies them on that basis, except to admit that the proximity of cloud servers to gamers is important.

## ANTICOMPETITIVE EFFECTS

109.    Paragraph 109 sets forth legal arguments and conclusions to which no response is required.  To the extent a response is required, Activision denies the allegations of Paragraph 109.

110.    Activision denies the allegations of Paragraph 110.  Activision specifically denies that such "AAA" content is a "substantially important input" for video game platforms, particularly given the success of video game content offered by a wide array of video game publishers and developers over the course of the past 20 years, and because the term "substantially important" is vague and undefined.

111.    Activision denies the allegations of Paragraph 111.  Activision specifically denies the implication that it is one of only a few developers able to produce high-quality and successful gaming franchises.

1   112.    Activision denies the allegations of Paragraph 112.

2   113.    Activision lacks knowledge or information sufficient to form a belief as to the truth

3   of the allegations of Paragraph 113 and denies them on that basis.

4   114.    Activision lacks knowledge or information sufficient to form a belief as to the truth

5   of the allegations of Paragraph 114 and denies them on that basis.

6   115.    Activision denies the allegations of the first and second sentences of Paragraph 115,

7   including because the term "powerful influence" is vague and undefined, except to admit that

8   Activision receives an ▮ percent revenue share for *Call of Duty* on Xbox consoles.  Activision lacks

9   knowledge or information sufficient to form a belief as to the truth of the allegations of the third

10  sentence of Paragraph 115 and denies them on that basis.

11  116.    Activision denies the allegations of Paragraph 116.

12  117.    Activision denies the allegations of Paragraph 117.

13  118.    Activision denies the allegations of Paragraph 118.

14  119.    Activision denies the allegations of the first sentence of Paragraph 119.  Activision

15  admits the allegations of the second sentence of Paragraph 119.  Activision admits that the third

16  sentence of Paragraph 119 purports to quote from one or more unidentified sources.  Activision refers

17  to any such source, to the extent it exists, for its contents and context and denies any characterization

18  thereof.  Activision denies the allegations of the fourth sentence of Paragraph 119.

19  120.    Activision admits the allegations of the first and second sentences of Paragraph 120.

20  Activision lacks knowledge or information sufficient to form a belief as to the truth of the allegations

21  of the third and fourth sentences of Paragraph 120 and denies them on that basis.  Activision denies

22  the allegations of the fifth sentence of Paragraph 120.

23  121.    Activision denies the allegations of Paragraph 121, except to admit that gaming is a

24  growing industry.

25  122.    Activision denies the allegations of the first sentence of Paragraph 122, except to

26  admit that Activision has financial incentives to maximize its profits from the sale of its video game

27  titles.  Activision denies the allegations of the second and third sentences of Paragraph 122.

28  123.    Activision denies the allegations of Paragraph 123.

**DEFENDANT ACTIVISION'S ANSWER AND AFFIRMATIVE DEFENSES**          **Case No. 3:23-cv-02880-JSC**

124.    Activision denies the allegations of the first sentence of Paragraph 124.  Activision admits that the second sentence of Paragraph 124 purports to reference a 2019 Activision presentation.  Activision refers to that presentation, to the extent it exists, for its contents and context and denies any characterization thereof.

125.    Activision denies the allegations of the first and second sentences of Paragraph 125.  Activision lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 125 and denies them on that basis.

126.    Activision lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 126 and denies them on that basis.

127.    Activision lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 127 and denies them on that basis, except to admit that Microsoft acquired ZeniMax, that ZeniMax is the parent company of a game developer, and that Microsoft has publicly announced that it may make some future single-player ZeniMax games exclusive to Xbox and PC when they are initially released.

128.    Activision lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 128 and denies them on that basis.

129.    Activision lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of Paragraph 129 and denies them on that basis.  Activision denies the second sentence of Paragraph 129.

130.    Activision lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of Paragraph 130 and denies them on that basis.  Activision denies the allegations of the second sentence of Paragraph 130.

131.    Paragraph 131 sets forth legal arguments and conclusions to which no response is required.  To the extent a response is required, Activision denies the allegations of Paragraph 131.

132.    Paragraph 132 sets forth legal arguments and conclusions to which no response is required.  To the extent a response is required, Activision denies the allegations of Paragraph 132.

**LACK OF COUNTERVAILING FACTORS**

133.    Paragraph 133 sets forth legal arguments and conclusions to which no response is required.  To the extent a response is required, Activision denies the allegations of Paragraph 133.

134.    Paragraph 134 sets forth legal arguments and conclusions to which no response is required.  To the extent a response is required, Activision denies the allegations of Paragraph 134.

**LIKELIHOOD OF SUCCESS ON THE MERITS,**
**BALANCE OF EQUITIES, AND NEED FOR RELIEF**

135.    Paragraph 135 sets forth legal arguments and conclusions to which no response is required.  To the extent a response is required, Activision denies the allegations of Paragraph 135.

136.    Paragraph 136 sets forth legal arguments and conclusions to which no response is required.  To the extent a response is required, Activision denies the allegations of Paragraph 136.

137.    Paragraph 137 sets forth legal arguments and conclusions to which no response is required.  To the extent a response is required, Activision denies the allegations of Paragraph 137.

138.    Paragraph 138 sets forth legal arguments and conclusions to which no response is required.  To the extent a response is required, Activision denies the allegations of Paragraph 138.

**AFFIRMATIVE AND OTHER DEFENSES**

Activision asserts the following defenses with respect to the causes of action alleged in the Complaint, without assuming the burden of proof or persuasion where such burden rests on the FTC. Activision has not knowingly or intentionally waived any applicable defenses, and it reserves the right to assert and rely upon other applicable defenses that may become available or apparent throughout the course of the action.  Activision reserves the right to amend, or seek to amend, its answer or affirmative defenses.

1.      The Complaint fails to state a claim upon which relief can be granted.

2.      The Complaint fails to allege a plausible relevant product market or markets.

3.      The Complaint fails to allege a plausible relevant geographic market.

4.      The Complaint fails to allege undue share in any plausibly defined relevant market.

5.      The Complaint fails to allege any harm to competition.

6.      The Complaint fails to allege any harm to consumers or consumer welfare.

7.     The combination of Microsoft's gaming business with Activision's business will be procompetitive.  The transaction will result in substantial acquisition-specific efficiencies, synergies, and other procompetitive effects that will directly benefit consumers.  These benefits will greatly outweigh any and all proffered anticompetitive effects.

8.     There will be no harm to competition, consumers, or consumer welfare because there is, and will continue to be, entry and expansion by competitors, which is timely, likely, and sufficient.

9.     The alleged harm to potential competition is not actionable.

10.    The FTC cannot provide clear proof that the combination of Microsoft's gaming business and Activision's business would restrain trade in the alleged markets for "multi-game content library subscription services" or "cloud gaming subscription services" because but-for the proposed transaction, Activision's games would not be available on any such service.

11.    The FTC fails to allege a time frame for the alleged anticompetitive effects.

12.    The FTC is not entitled to relief because none of Microsoft's conduct identified in the Complaint is actionable—independently or in the aggregate—under the antitrust laws.

13.    Microsoft's offers of binding contractual commitments to continue to offer certain titles like *Call of Duty* to other gaming companies, including Nintendo and Sony, for at least ten years address all of the alleged anticompetitive effects in the alleged markets and ensure that there will be no harm to competition or consumers.

14.    The FTC's claims are too speculative to support any claim on which relief can be granted.

15.    The injunctive relief the Complaint seeks is inconsistent with the public interest and the balance of the equities.

16.    The FTC cannot show that Activision is likely to make its content available on content subscription libraries or cloud gaming platforms but for the merger.

17.    The FTC cannot show that Microsoft or Activision has market power with respect to any relevant market.

18.    The effects of the merger will be pro-competitive and this is in the public interest.

1

**PRAYER FOR RELIEF**

2      WHEREFORE, Activision Blizzard, Inc. requests that the Court enter judgment in its favor

3   and enter an order:

4           1.      Dissolving the temporary restraining order;

5           2.      Denying the FTC's request for injunctive relief;

6           3.      Dismissing the Complaint with prejudice;

7           4.      Awarding Activision its costs of suit, including expert fees and reasonable attorneys'

8   fees, as may be allowed by law; and

9           5.      Awarding such other and further relief as the Court may deem just and proper.

10
     DATED:  June 30, 2023                    By: /s/ Caroline Van Ness
11                                                _____
                                                  Jack DiCanio (SBN 138782)
12                                                Caroline Van Ness (SBN 281675)
                                                  SKADDEN, ARPS, SLATE, MEAGHER & FLOM
13                                                LLP
                                                  525 University Avenue
14                                                Palo Alto, California 94301
                                                  Telephone: (650) 470-4500
15                                                Facsimile: (213) 621-5430
                                                  Email: jack.dicanio@skadden.com
16                                                Email: caroline.vanness@skadden.com

17                                                Steven C. Sunshine (admitted *pro hac vice*)
                                                  Julia K. York (admitted *pro hac vice*)
18                                                SKADDEN, ARPS, SLATE, MEAGHER & FLOM
                                                  LLP
19                                                1440 New York Avenue, N.W.
                                                  Washington, DC 20005-2111
20                                                Telephone: (202) 371-7000
                                                  Facsimile: (202) 393-5760
21                                                Email: steven.sunshine@skadden.com
                                                  Email: julia.york@skadden.com
22
                                                  Michael J. Sheerin (admitted *pro hac vice*)
23                                                Evan R. Kreiner (admitted *pro hac vice*)
                                                  SKADDEN, ARPS, SLATE, MEAGHER & FLOM
24                                                LLP
                                                  1 Manhattan West
25                                                New York, NY 10001
                                                  Telephone: (212) 735-3000
26                                                Fax: (212) 735-2000
                                                  Email: michael.sheerin@skadden.com
27                                                Email: evan.kreiner@skadden.com

28                                                *Counsel for Defendant Activision Blizzard, Inc.*