Pages 1 - 30

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jacqueline Scott Corley, Judge

```
FEDERAL TRADE COMMISSION,        )
                                 )
            Plaintiff,           )
                                 )
   VS.                           )     NO. C 23-02880 JSC
                                 )
MICROSOFT CORPORATION, et al.,   )
                                 )
            Defendants.          )
_____ )
```
                              San Francisco, California
                              Wednesday, June 21, 2023

### TRANSCRIPT OF PROCEEDINGS

**APPEARANCES**:

For Plaintiff:
                    FEDERAL TRADE COMMISSION
                    600 Pennsylvania Avenue, NW
                    Washington, D.C.  20580
            BY:  **JAMES H. WEINGARTEN, ATTORNEY AT LAW**
                 **JAMES ABELL, ATTORNEY AT LAW**
                 **JENNIFER FLEURY, ATTORNEY AT LAW**
                 **PEGGY FEMENELLA, ATTORNEY AT LAW**
                 **CEM AKLEMAN, ATTORNEY AT LAW**
                 **NICOLE CALLAN, ATTORNEY AT LAW**


For Defendant Microsoft:
                    WILKINSON STEKLOFF LLP
                    2001 M Street, NW - 10th Floor
                    Washington, D.C.  20036
            BY:  **BETH WILKINSON, ATTORNEY AT LAW**
                 **RAKESH N. KILARU, ATTORNEY AT LAW**
                 **KIERAN GOSTIN, ATTORNEY AT LAW**
                 **GRACE HILL, ATTORNEY AT LAW**
                 **SARAH NEUMAN, ATTORNEY AT LAW**


            **(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**

REPORTED BY:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
              United States District Court - Official Reporter

**APPEARANCES:**   (cont'd)

For Plaintiff DeMartini in related case 22-08991:

                    JOSEPH SAVERI LAW FIRM, INC.
                    601 California Street - Suite 1000
                    San Francisco, California  94108
       BY:  **DAVID H. SEIDEL, ATTORNEY AT LAW**
            **CADIO R. ZIRPOLI, ATTORNEY AT LAW**

For Defendant Activision Blizzard, Inc.:

                    SKADDEN ARPS SLATE MEAGHER & FLOM LLP
                    1440 New York Avenue, N.W.
                    Washington, D.C.  20005
       BY:  **STEVEN C. SUNSHINE, ATTORNEY AT LAW**
            **JULIA K. YORK, ATTORNEY AT LAW**

                    SKADDEN ARPS SLATE MEAGHER & FLOM LLP
                    525 University Avenue
                    Palo Alto, California  94301
       BY:  **CAROLINE VAN NESS, ATTORNEY AT LAW**

                    SKADDEN ARPS SLATE MEAGHER & FLOM LLP
                    1440 New York Avenue, N.W.
                    Washington, D.C.  20005
       BY:  **STEVEN C. SUNSHINE, ATTORNEY AT LAW**
            **JULIA K. YORK, ATTORNEY AT LAW**

For Sony Interactive:

                    CLEARY GOTTLIEB STEEN & HAMILTON LLP
                    2112 Pennsylvania Avenue, NW-Suite 1000
                    Washington, D.C.  20037
       BY:  **ELSBETH BENNETT, ATTORNEY AT LAW**

| | |
|---|---|
| 1 | **Wednesday - June 21, 2023**                                **2:00 p.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---o0o--- |
| 4 | **THE CLERK:**  Calling Civil Action C23-2880, FTC versus |
| 5 | Microsoft.  Counsel. |
| 6 | **MR. WEINGARTEN:**  Good morning, Your Honor. |
| 7 | **THE COURT:**  Good afternoon. |
| 8 | **MR. WEINGARTEN:**  Good afternoon.  James Weingarten on |
| 9 | behalf of the Federal Trade Commission.  I'm joined today by |
| 10 | Jenny Fleury, Peggy Femenella, Jim Abell, Nicole Callan, and |
| 11 | Cem Akleman. |
| 12 | **THE COURT:**  Good afternoon. |
| 13 | **MS. WILKINSON:**  Beth Wilkinson from Microsoft.  And |
| 14 | with me is Kieran Gostin, Grace Hill, Rakesh Kilaru, and Sarah |
| 15 | Neuman. |
| 16 | **THE COURT:**  Good afternoon. |
| 17 | **MR. SUNSHINE:**  Good afternoon, Your Honor.  Steve |
| 18 | Sunshine on behalf of Activision.  And I'm joined by my |
| 19 | colleagues Julia York and Caroline Van Ness. |
| 20 | **THE COURT:**  Great.  Good afternoon. |
| 21 | Okay.  First, I want to apologize for not being able to |
| 22 | meet you until today.  I was actually out of the country until |
| 23 | yesterday.  So anyway, I'm sorry about that. |
| 24 | Again, I want to disclose again -- I'm sure everyone |
| 25 | already knows as I disclosed on January 19th in the DeMartini |

1  action -- that my adult 20-something child works for Microsoft
2  since August, I guess.  Not in video gaming at all, and nothing
3  even related to video gaming.
4       And I'm sure I have a copy of Call of Duty at my house
5  somewhere.  I don't even know what platform my children use,
6  and I personally never played.
7       All right.  And obviously this is happening very quickly.
8  When I received the FTC's motion given the concern about the
9  merger, given the deadline, and given the financial penalty, we
10  need to get this evidentiary hearing in so that I have time to
11  make a reasoned decision although, given the schedule, I'm not
12  going to have the time that some of my colleagues have had, but
13  I want to get it in for that reason, and also to leave time for
14  whoever, whichever, is the aggrieved party to seek someone
15  smarter than me to look at it, if needed.  So that's why we are
16  doing this in such a rush.
17       Our court reporter will be here in person tomorrow.  She
18  is remote today.  She is flying in tonight or later this
19  afternoon.  So we will have to finish so that she can get on
20  the plane.  But because she is doing it remotely today, when
21  you speak, make sure you speak into the microphone so she can
22  get it down.  But she will be here in person tomorrow.
23       So let's go through some logistics.  And I'm open to any
24  suggestions any of you have.  And I do want to thank you for
25  working so well together so far to get here today.

1          The first issue, of course, confidentiality is a big

2    issue.  So the parties, and particular for the nonparties who

3    aren't even parties to this action, but on the other hand,

4    there is clearly some interest in this case and public access

5    is important as well.

6          What I would like to do is for us to convene at 8:15 every

7    morning, and we will have a closed session at 8:15 in which we

8    will try to work out the confidentiality objections in advance

9    of the public proceeding to ensure that the public proceeding

10   is as public as possible.  So just plan on being here ready to

11   go at 8:15.

12         But obviously, there is going to be a lot of confidential

13   material and the question is how do we handle that.

14         Hopefully I will have -- and we will talk about that -- a

15   book, right, of hard copy exhibits as well, and the witness.

16   And I think the thing to do is to the extent the witness or the

17   lawyer can direct me to a document and the location, tell me to

18   look at the line without speaking out loud the confidential

19   information, that way I really want to try to keep the

20   courtroom open and not close it.

21         But I'm the decider, not a jury, so we have that

22   advantage.  If you just point me to the document and all of us

23   remember not to say things.  That, I think, is how we should

24   proceed there.

25         With respect to the video deposition testimony, I know --

1  I believe there are four witnesses.  I believe Nvidia is two of

2  the witnesses, and they filed -- I don't know even know if you

3  have seen it -- very recently they filed their confidentiality

4  sealing.

5       So for the FTC, you are calling the video; right?

6            **MR. WEINGARTEN:**  Yes.

7            **THE COURT:**  So I have no idea if the portions they

8  have identified are what you are playing or not playing.  So

9  you will need to look at that and figure out how to do that.

10      Yeah, that's something we can address at 8:15 on whatever

11  day we need to do.

12      The other thing I would like to do is in advance of --

13  well, we -- like today, if you can do it by 5:00 today, let me

14  know.  I assume you are going first, FTC.

15           **MR. WEINGARTEN:**  Yes, Your Honor.

16           **THE COURT:**  Your motion.  What witnesses you are

17  calling, let the other side know and what exhibits you are

18  going to use with those witnesses.

19      And then what would helpful to me would -- is to also, if

20  you could, identify where on the docket, to the extent it

21  exists, a declaration with respect to sealing that exhibit.

22      A lot of it I may be able to work out before 8:15 in the

23  morning, but then at least at 8:15 we will be ready to go and

24  where to go.

25      Now, I know there is counsel for some of the other parties

1 sitting here.  Some of it we may not be able to do, which we

2 will have to keep it sealed until I actually get it resolved.

3      What I intend to do is for those exhibits that are not

4 sealed that are public or are redacted is to make them

5 available on a website for the public.

6      Judge Chen is doing that right now in his HIV antitrust

7 case.  So the public may not always get it contemporaneously,

8 but we will get it as soon as we can.  Be mindful of

9 protecting, especially nonparties' confidential information.

10      So does that make sense to each side, is that when you

11 submit your witnesses, the exhibits you intend to use, also

12 tell me where on the docket by docket number I can find the

13 declaration with respect to sealing that particular portion of

14 that exhibit.

15      **MR. WEINGARTEN:**  That makes good sense to us.  I'm not

16 sure we will be able to accomplish it by 5:00 p.m. today for

17 tomorrow.  It may be in the wee hours, but thank you.

18      **THE COURT:**  No, that's fine.  I understand that.  But

19 sort of going forward, do that.  At least 24 hours in advance,

20 each side tell the other side who you are going to call and

21 what exhibits you are going to use.

22      That seems to me our biggest logistical hurdle here is

23 balancing the public's right of access with, as in many merger

24 cases, the confidential information that exists out there.

25      Mr. Weingarten.

1      **MR. WEINGARTEN:**  We have had good success working with

2   the other side.  We will continue to do that.  In other cases

3   like this we have tried to structure our examination so there

4   is a public and a nonpublic portion, so I'm sure we will be

5   able to try and figure something out along that way.

6      **THE COURT:**  Again, as much as of the public, keep it

7   public as we can.

8      Let's see, and some of the things I note that Sony needed

9   an extension until June 23rd to submit their statement.

10   Nintendo also asked some stuff.

11      So we may need to take some witnesses and some exhibits

12   out of order or potentially go forward and keep them under seal

13   subject to unsealing after the fact.

14      **MR. WEINGARTEN:**  On the Sony, that would be a video,

15   so that one might be a candidate.  We will think about it, but

16   that could be portions.  It doesn't involve a live witness.

17      **THE COURT:**  Yes.  You guys can just stay up here too

18   unless you like getting up and down.

19      **MS. WILKINSON:**  That would be great.  There are Sony

20   documents as well as Mr. Ryan's deposition.  And we have tried

21   to work out, and Counsel has been very accommodating, on

22   portions we need right away, to give them those instead of

23   waiting for all the documents or if we only want a short

24   portion.

25      So we have done that for anything we are using in the

```
 1   opening or with any other witness.  And I think we can continue
 2   to do that.
 3       And we discussed today a process where we have worked
 4   together the night before and tried to see if we can work it
 5   out so we won't have much to work out at 8:15.
 6           THE COURT:  That would be great.  As much as possible.
 7   And, of course, the guiding principle is to redact and to leave
 8   as much publicly available as you can.  So there may be figures
 9   you redact, but not the headers, those kinds of things.
10       Okay.  You mentioned openings.  I guess you want to -- I
11   was going to say I don't need it.  I have read your preliminary
12   injunction proceedings, but if you want to do them, sure.  Did
13   you want to?
14           MR. WEINGARTEN:  I think our view, unless Your Honor
15   says you strongly disfavor them, we would like 20 minutes.
16           THE COURT:  That's fine.  I will give each side 20
17   minutes.  And I'm assuming by "side," I'm referring to
18   Microsoft/Activision.
19           MS. WILKINSON:  Yes, Your Honor.
20           THE COURT:  All right.  Okay.  Each side 20 minutes,
21   that would be fine.
22       For witnesses, I'm not going to give you a time limit.  It
23   is a bench trial, but -- and you -- because I saw your
24   estimates and you clearly are trying to be efficient.  If you
25   start to go over the time you estimated, I may nudge you a bit
```

1   and remind you of what your estimate was.

2        **MS. WILKINSON:**  Speaking of that, Your Honor, on your

3   order you said next Thursday was available if we needed it.  I

4   think we have both, in our witness estimates, assumed we could

5   be in front of you all day Thursday.  And I just wanted to

6   clarify that you are willing to do so.

7        **THE COURT:**  No.  I am.  I am.  And I shouldn't say

8   this.  I shouldn't say this.  But I'm also available Friday.

9   But again, the less time you leave me to actually get an order

10  out, right, we need to get it -- we need to get it in.

11       Almost every trial I have done -- in jury trials I always

12  give time limits.  They come in under.  That's why I said "as

13  needed."  They come in under.  But your time.

14       Let me see.  All right.  Let's talk now about, oh,

15  exhibits.  I don't have any yet.  What is the plan?

16       **MR. WEINGARTEN:**  I'm -- so, Your Honor, James

17  Weingarten again.  I believe we sent Ms. Means a link.

18       **THE COURT:**  It was a link to the exhibits for the

19  preliminary injunction motion.  So what I need are the trial,

20  evidentiary hearing.  And I realize there is overlap, but I

21  need it for the evidentiary hearing.

22       It's fine if I don't have them.  But I assume tomorrow I

23  will at least have written exhibits; right?

24       **MR. WEINGARTEN:**  We intend to send a link for

25  everything, Your Honor.  And we will have binders.

1        **MS. WILKINSON:**  Yes, I have one question about that,

2   Your Honor.  But first, tomorrow.  Thanks to the FTC, we are

3   calling one of our witnesses out of order, Ms. Bond.  So we

4   will have that notebook for you of her exhibits.

5        And we did not, in our preliminary findings of facts and

6   conclusions of law, give specific cites because we had looked

7   back at other submissions too.  They didn't have them.  But the

8   FTC did.

9        If you'd like us to do that sooner rather than later, we

10  can do that.  But we will also have all the exhibits a day in

11  advance now that we are -- we know what you would like -- to

12  you.  And we will share them with the FTC as well.

13       **THE COURT:**  Well, certainly your final ones need to

14  have those --

15       **MS. WILKINSON:**  Of course.

16       **THE COURT:**  -- citations.  And it is up to you if you

17  want to do them in advance.

18       All right.  And then I also need, in the Cloud, the

19  exhibits as well, right, to the e-mail that you were given,

20  because that will make it easier for preparing and sharing

21  around with my law clerks.

22       **MS. WILKINSON:**  Yes.

23       **THE COURT:**  So is that how you intend to do it?  There

24  will be a binder with each witness?

25       **MR. WEINGARTEN:**  Yes, Your Honor.  I think we talked

1    to Ms. Means.  And obviously whatever the Court prefers, but a

2    binder for Your Honor, a binder for the reporter, if the

3    reporter would like one, and for opposing counsel, what we

4    intend to go through for the witness with that.

5            **THE COURT:**  All right.  That would be good.  And

6    that's, again, what I will be using on the bench, will be the

7    hard copies.

8        The motion for a protective order.  And I know I probably

9    have counsel for some of the nonparties here, and I'm happy to

10   hear from them if they wish.

11       But now that we have Microsoft and Activision's submission

12   in which they have actually identified the in-house counsel who

13   are litigation or regulatory attorneys, not in any way involved

14   in business decision-making, I think, and given that the access

15   would be limited to those documents on the trial exhibit list,

16   nothing else, so that you at least know the universe of

17   potential, I would be inclined to go along with that, subject

18   to -- to the extent FTC or really any nonparty says, well,

19   there is -- this document in particular is sensitive or this

20   should be redacted, I obviously would hear that.

21           **MR. WEINGARTEN:**  Well, Your Honor, I think the FTC has

22   an institutional interest in trying to protect especially

23   third-party information because we rely on their candor in our

24   investigation process as well.

25       So I suspect as to specific objections for third-party

1    documents, the third parties are best positioned.  We still

2    have some concerns about the attorneys' names identified, both

3    in terms of number and position in the company.

4        Microsoft and Activision are seeking to have five in-house

5    counsel.  That seems in excess of what other orders, including

6    orders that Microsoft and Activision cited in their filings,

7    suggest is appropriate.

8        Also, we have some concerns.  At least one of the counsel

9    is head of litigation for all of Microsoft.

10           **THE COURT:**  Yes.

11           **MR. WEINGARTEN:**  That is a senior title that raises

12   some concerns about competition.

13       As to the others, one never knows what job someone is

14   going to have a year from now.  So there is some concern,

15   Your Honor, that while not engaged in competitive

16   decision-making, whatever that means, today, one cannot unlearn

17   what one hears about a competitor's most sensitive secrets and

18   may be in a position in a year or two where they can't unlearn

19   it and it comes into play.

20           **THE COURT:**  Well, sure.  Outside counsel could also

21   get hired inside as well.

22           **MR. WEINGARTEN:**  That is true.

23           **THE COURT:**  That exists.  But you have to weigh it

24   against, we don't -- we don't rule on parties with secret

25   evidence.  That's just not what we do in this country; right?

1      **MR. WEINGARTEN:**  Yes.

2      **THE COURT:**  So we have to balance that.  So that's why

3  I -- you know, I -- and in the *Meta* case, FTC did agree.  I

4  think it was even a stipulated protective order.

5      **MR. WEINGARTEN:**  I will speak to that if I can,

6  Your Honor.

7      In *Meta* there was no Part 3 proceeding.  There was no

8  administrative proceeding, so we had not been operating under

9  the administrative protective order which does not allow

10  in-house counsel access.

11      **THE COURT:**  But putting that aside, are you telling me

12  there wasn't any sensitive third-party information?

13      **MR. WEINGARTEN:**  No, there was, Your Honor.  There

14  was.

15      **THE COURT:**  So whatever the rule is in the FTC

16  administrative proceedings, I have to operate under the rules

17  here.  So putting that aside, then what's the difference?

18      **MR. WEINGARTEN:**  I think the difference is,

19  Your Honor, here we have an active competitive market of a

20  slightly different nature than the nascent market that was at

21  issue in *Meta*.

22      And I think we have fierce competitors who have made their

23  submissions who are concerned about in-house counsel's access.

24      Again, our interest is not in particular any particular

25  trade secret.  It is just in making sure those parties are

1    protected for the sake of the candor of our process and moving

2    forward.

3              **THE COURT:**  All right.  Well, let me hear about why

4    Microsoft -- why they need so many in-house counsel.

5              **MS. WILKINSON:**  Your Honor, those are the folks that

6    we -- have been working on to get ready for the trial.  And as

7    you have said, it is happening very quickly and we have to make

8    a lot of decisions very quickly.

9         Those folks have filed their declarations.  They are

10   officers of the Court.  They are attorneys.  They know their

11   obligations.  They take this seriously.  And we need their

12   assistance to make decisions in this case.

13        And I understand that Mr. Weingarten has said in the

14   discovery phase they want to, you know, have their third

15   parties cooperate.

16        But this happens in federal courts all the time.  There is

17   sensitive information.  As you said, Judge Chen is overseeing a

18   trial right now where there's sensitive information.  It seems

19   to be happening more and more with IP cases and these antitrust

20   cases.

21        And we would like to -- it is only for the next week or

22   two.  It is only, you know, for the FTC, 200 exhibits.  They

23   had almost 3,000 on the list that they gave us in the FTC

24   discovery process.  So I don't think there were -- I know there

25   won't be any problem with those attorneys following, you know,

1    the obligations that they would be responsible to abide by if

2    you allowed them under the protective order to see this limited

3    subset of information.

4           **THE COURT:**  Um, I don't know if there is anyone from

5    any of the other nonparties who wishes to be heard.  You can

6    come forward.

7           **MS. BENNETT:**  Your Honor, my name is Elsbeth Bennett.

8    I am here for Sony Interactive Entertainment LLC.

9           And we did submit a short filing yesterday asking for the

10   Court to enter the FTC's proposed protective order.  I think

11   hearing what Your Honor is saying, perhaps the right course of

12   action is a highly confidential designation that continues to

13   be outside counsel only and we can share redacted versions with

14   their proposed in-house counsel.

15          We think five is too many.  The head of litigation is also

16   a concern to us.  But we can share redacted versions.  We have

17   been cooperating, I think, pretty closely with our counsel.

18   They gave us notice.  We told them what we considered

19   confidential.

20          I'm trying to move through it.

21          So I think if we can have a separate designation for

22   highly confidential, my client did produce lots of information,

23   data that certainly is not public and should not be shared with

24   a competitor, even in-house counsel.

25          **THE COURT:**  Okay.  So that's what I'm saying, is to

1    the extent there is -- because now we have a universe.  It is

2    only the exhibits on the trial list.  And I don't -- have you

3    seen that?

4         **MS. BENNETT:**  Yes, we have seen --

5         **THE COURT:**  All right.  So to the extent there is

6    particular documents there that you think even in-house

7    counsel, notwithstanding their declaration or maybe there is

8    information within there that you want redacted, then yes,

9    please, raise that with Microsoft/Activision, and see if you

10   can work it out.  That to me seems the answer, like you could

11   still get your assistance or help if you will redact the

12   particularly sensitive information in some of those documents.

13        **MS. BENNETT:**  Right.  And I think until we have had a

14   chance to do that, which we are working on, we would ask that

15   everything continue to be outside counsel only, until we have

16   had a chance to go through and make those redactions as needed

17   and designate things that maybe could be shared with in-house.

18        **THE COURT:**  Okay.  Are you doing that today?

19        **MS. BENNETT:**  Yes, we are working on it today.  We

20   didn't do it with the idea of two designations in time so that

21   might take us a little more time.  But we have been trying to

22   work through redactions and what may not need redacted at all.

23        **THE COURT:**  Ms. Wilkinson?

24        **MS. WILKINSON:**  First of all, I'm going to clarify.

25   When people talk about five attorneys, there is three in-house

1  for Microsoft and two for Activision.  So it's not five

2  Microsoft lawyers.

3       **THE COURT:**  But they are hoping to all work for the

4  same company.

5       **MS. WILKINSON:**  Yes, they are.  Very soon.

6       And I understand the process that's being described, but

7  it is unworkable in this -- you know, seven-, eight-day period

8  that we have.

9       So we were sending them over the things that we wanted to

10  be public.  That is different than saying you are redacting a

11  subset.  And I think you were suggesting a very small highly

12  sensitive subset for our in-house counsel.

13       So the standard is different.  And if we don't get that

14  quickly, they are not --

15       **THE COURT:**  No, no.  Yes, I think you need to -- you

16  have that list now.

17       **MS. WILKINSON:**  We do.

18       **THE COURT:**  You know what my view is, which I think --

19  these aren't decision -- business decision-making attorneys,

20  and they are attorneys and officers of the Court.

21       But I understand that there may be something that is still

22  so sensitive that you don't want even these attorneys to see.

23       So what you need to do is -- today, is let them know if

24  there is anything like that, what it is and what is the

25  information you want redacted.  And then Microsoft/Activision

1    can then decide okay, yes, we can live with that.  That's fine.

2    I will show them with this information redacted or not, but you

3    will need to do that today.

4            **MS. BENNETT:**  Okay.  Understood.

5            **THE COURT:**  It shouldn't be too much.

6            **MS. BENNETT:**  Understood.  Thank you.

7            **THE COURT:**  And that goes with any other nonparty as

8    well.  To the extent there's particular information that you

9    think even with these attorneys and their declarations,

10   clients, that's just too much, then work with

11   Microsoft/Activision to see if we can just redact that.

12                        (Pause in proceedings.)

13           **THE COURT:**  Let's see, just other logistics.

14       The media room on -- in the lobby of the courthouse will

15   be open.  It is even open today, but it will be open for the

16   entire evidentiary hearing.

17       So anyone who prefers to sort of be typing along, that

18   might be a better place to go so you don't interfere.

19       We talked about how we are going to address

20   confidentiality.  We will be here at 8:15 every morning, really

21   to run through what's there.

22       I don't think I yet have, and I understand -- no, you said

23   I did get the FTC's proposed findings of fact and conclusions

24   of law.

25           **MR. WEINGARTEN:**  Yes, Your Honor.  We filed those

1    personally.  We served them on the Court.

2          **THE COURT:**  Served them?

3          **MR. WEINGARTEN:**  Gave them to Ms. Means.  I'm not sure

4    if we got a filed copy or not on ECF.

5          **THE COURT:**  I know that Defendant submitted, but had

6    not yet been filed, but maybe it will soon be filed?

7          **MS. WILKINSON:**  Excuse me.  Beth Wilkinson for

8    Microsoft.

9          It has been submitted the same way as the FTC.  The only

10   thing we didn't do was put the cites.

11         **THE COURT:**  I don't care about the cites, but I do

12   want on the docket the unredacted -- the redacted -- sorry.

13   The redacted version should be filed on the docket.

14         **MS. WILKINSON:**  Yes, we will do that, Your Honor.

15         **THE COURT:**  Okay.  And the FTC as well.

16         Okay.  What else should we discuss?

17         **MS. WILKINSON:**  I have a practical question.  Since we

18   have 20 minutes, would you like me to address the legal

19   standards or would you prefer for me to address the merits?  I

20   feel like in front of a judge, I'm not sure I should be wasting

21   your time arguing the law.

22         **THE COURT:**  You can go right to the merits.

23         **MS. WILKINSON:**  Thank you, Your Honor.

24                     (Pause in proceedings.)

25         **THE COURT:**  Anything else?

1          **MR. WEINGARTEN:**  James Weingarten, again, Your Honor.

2     There may be some evidentiary issues that arise as we

3 learn more about the witness order and what's going to come.

4     And so we will try to work them out with the other side.

5 If we don't, we may be serving our trial in a bench brief,

6 three pages or four pages in the morning, if that's acceptable

7 to Your Honor.

8          **THE COURT:**  In the morning, yeah.  If it is in the

9 morning, then I won't be able to --

10          **MR. WEINGARTEN:**  We will work it the night before.

11          **THE COURT:**  -- work out.  When you say -- okay.

12     You mean like hearsay, like what kind of evidentiary

13 issues?

14          **MR. WEINGARTEN:**  No.  I can let my colleague

15 Ms. Fleury discuss, Your Honor.  But we have some concerns

16 about sword/shield and privilege and some of the arguments in

17 evidence that we think Microsoft is going to introduce in this

18 matter.

19          **MS. FLEURY:**  Good morning, Your Honor.  This is

20 Jennifer Fleury for the FTC.

21     We would just like some guidance from the Court on how

22 best to present these issues.  We are trying not to disrupt

23 witness testimony.  We do think these issues are likely to come

24 up.

25     We have been in the context of the administrative

1    proceeding meeting and conferring with the other side.  So I

2    will just give you a brief introduction as to what the issue

3    is, and then you can decide whether our proposal for how to

4    submit it is acceptable.

5        Based on representations that Defendants have made in the

6    joint statement filed with the Court yesterday, as well as

7    their opposing brief, the findings of fact, we believe that

8    Microsoft witnesses are likely to testify regarding assertions

9    about the competitive effects of the side deals that Microsoft

10   has entered into and pursued in an effort to secure regulatory

11   approval.

12       The problem is that Microsoft has also asserted privilege

13   over the underlying analyses and internal communications

14   regarding those agreements.  So we have been unable to assess

15   the validity of the statements their witnesses are going to

16   testify to about the effects of those side deals.

17       **THE COURT:**  So you believe that if they offer it, that

18   there is a waiver?

19       **MS. FLEURY:**  We are not contesting their claims of

20   privilege.  What we are saying is they shouldn't be -- based on

21   sword and shield case law in this district and elsewhere, they

22   shouldn't be allowed to testify about the effects of those

23   agreements when they have blocked every effort for us to

24   understand what that is based on.

25       And that goes for both their fact witnesses that are going

1  to testify tomorrow, which is why we are raising this now, as

2  well as their defense expert.  That's our understanding.

3         **THE COURT:**  All right.

4     Ms. Wilkinson.

5         **MS. WILKINSON:**  Yes, Your Honor.  We did exchange

6  e-mails about this yesterday, and we made quite clear to them

7  that we had not asserted privilege over the agreements.

8     What happened during the process of the last few months is

9  Microsoft would sign agreements with various parties, and

10  Nintendo is probably the best example.  The agreement was

11  signed.  And we turned it over to the FTC.

12     When witnesses were deposed, they were asked about it and

13  they could ask them about the contracts.  The one thing they

14  asked was:  Did you do any financial analysis behind the

15  contract to justify it to yourself.

16     We told them that we were not asserting privilege over any

17  of those.  The only financial analysis that we had asserted

18  privilege over was for remedies, which we are not -- you know,

19  those are not the contracts.  But the contracts themselves

20  should be admissible.

21     It doesn't matter -- we are not -- the financial analysis

22  that they think exists or that we asserted privilege over, when

23  we didn't, doesn't matter.  But also they waived their

24  position.

25     We had depositions.  If they thought we asserted privilege

improperly, that's what a motion to compel is for.  And they
had Judge Chappell, who heard other disputes.  So they should
have moved, if they thought somehow, you know, that they
weren't getting the information they needed because we asserted
privilege.

     And they didn't do that.  They just told us yesterday for
the first time these agreements, of course, are key because
they are going to show how we are distributing the products
that Activision makes more widely once the merger is completed.

          **THE COURT:**  So I think probably because it is a bench
trial and -- in any event, I don't know that I need to rule
necessarily in advance.  It could be sort -- it may likely go
to weight, right.  That's what it sounds like.  It almost goes
to weight to be given to any particular agreement.  Or maybe
the agreement -- I mean, I just don't know what's going to come
out.  In other words, I don't know that it needs to be
adjudicated in advance of the witness' testimony.

          **MS. FLEURY:**  Understood, Your Honor.  What our
proposal would be is that both sides simultaneously exchange
three-page briefs on this issue.

     I do think it is a little bit of a complicated issue.
There's also a lot -- been a lot of privilege objections.
There have been a lot of things that have happened in this
area.  As you know, the administrative proceeding is still
under way, and we are litigating that issue in that proceeding.

```
 1          What I would propose is that we submit, at a time that is
 2   acceptable to Your Honor, three-page briefs on this issue, on
 3   the sword/shield issues so that we don't have to interrupt
 4   witness testimony to do repeated sidebars.  So to give
 5   Your Honor --
 6          THE COURT:  No sidebar because it is a bench trial.
 7          MS. FLEURY:  Right.  Right.  But given all of the
 8   issues and the things that have been testified about, and the
 9   privilege objections that have been made, that's what we are
10   asking for right now, is that we be permitted to submit a
11   limited amount of briefing to clarify the issues in advance of
12   the witnesses.
13          THE COURT:  Well -- but then what do you want me to do
14   with that?
15          MS. FLEURY:  What I would like you to do is, first and
16   foremost, rule that if they have made privilege objections and
17   said we won't give you -- for example, if they have said their
18   witnesses can't tell us the analysis that they did with their
19   lawyers in response to regulatory concerns, they can't then
20   testify about the effects of those concerns.
21          THE COURT:  I can't do any of that out of context.  I
22   can't make any ruling out of context.
23          MS. FLEURY:  Understood, Your Honor.
24          THE COURT:  So I would need transcripts of
25   depositions --
```

1      **MS. FLEURY:**  Absolutely.

2      **THE COURT:**  -- and all that.  And I don't know how you

3   would do that in three to four pages.

4      **MS. FLEURY:**  We would love more pages.  But what we

5   are trying to do in light of the proceeding, in light of the

6   truncated schedule, we were trying to come up with a workable

7   plan that would give Your Honor the benefit of having some of

8   this context so that when these issues arise, we were able to

9   point to that briefing and better and more efficiently move

10  through those issues as they arise on the stand.

11     **THE COURT:**  I guess what I'm saying is I don't know

12  that I need to rule on them contemporaneously.  In other words,

13  Microsoft can offer the agreement, whatever.  You can

14  cross-examine the witness, ask the witness whatever you want.

15     The witness will either answer or they will assert the

16  privilege or not assert the privilege.  And then you can move

17  to strike, or in connection with not on such a rush -- I mean,

18  it is a rush no matter what -- but that's when the motion got

19  brought.

20     In that way do it, rather than -- in advance.  These --

21  you are right.  They are very complicated issues, and there is

22  just no way I could do that in advance.  I will need to have it

23  all laid out.

24     **MS. FLEURY:**  And that's what we are asking for, is the

25  opportunity to lay it out so that Your Honor had the benefit of

1    that as these issues arise.  I do think that, for example, the

2    issue of EC remedies, that they have mentioned in their

3    findings of fact and conclusions of law in particular, are

4    something we think is just entirely inappropriate for any of

5    their witnesses to testify about.

6        So that is a more clear-cut issue where we do think that

7    if you had the benefit of seeing a paper on that specific

8    issue, you might be able to make a ruling in advance.

9            **THE COURT:**  All right.  I mean, you can go ahead and

10   file it and they can respond.

11           **MS. FLEURY:**  We just didn't -- yeah, we wanted to make

12   sure we had a process set up in advance.

13           **THE COURT:**  Whatever -- I mean, whatever process you

14   want, I will do it if you think it's easy.  But generally, I

15   can just strike things too and not consider them.  But if you

16   think some -- is it easy is EC?  We can do that one.

17           **MS. FLEURY:**  Thank you, Your Honor.

18           **THE COURT:**  And maybe you work out that they are not

19   going to ask anything.  I don't know.

20           **MS. WILKINSON:**  I don't think we are going to have any

21   privilege issues on them asking about these contracts and

22   whether there was a financial --

23           **THE COURT:**  The remedies issue.

24           **MS. WILKINSON:**  Oh, the remedies issue, yes.  We can

25   discuss that.  I don't think that will be a problem either, but

1  we can discuss it.

2           THE COURT:  So maybe before you spend the time writing

3  your brief, see if you need to do it.

4           MS. FLEURY:  And this is your proposed because it's a

5  listed topic for one of their witnesses that they are calling

6  out of order in our case in chief tomorrow, so...

7           THE COURT:  I see.  I see.

8           MS. WILKINSON:  The issue will come up tomorrow, so

9  she will testify about the contracts themselves.  It is pretty

10  straightforward.

11      And if counsel wants to ask "did you do a financial

12  analysis before you signed the contract," I will not object.

13           THE COURT:  Yeah, just ask.  I mean, that will help

14  you with your brief.  You will lay your foundation.  Then it

15  will be in context and I will see how any invocation of

16  privilege is affecting your questioning because I will see it

17  live that way.

18           MS. FLEURY:  Understood.  And I think where the rubber

19  is going to hit the road is if they start to testify about the

20  effects of those agreements, about the competitive effects,

21  about the impact, about the impact on subscribers or lack

22  thereof, that's where I think it's been -- it would be

23  impossible for us to be able to interrogate those claims

24  without having underlying evidence.

25      As I said, if they say all of that was done at the

```
1   direction of attorney-client privilege, we are not contesting

2   the privilege.

3      What we are saying is they need to be -- they either need

4   to show their work or not testify about the effects of those

5   side agreements.

6            THE COURT:  Or testify and I can strike it and not

7   consider it after the fact, if you are correct about that.

8            MS. FLEURY:  Understood, Your Honor.

9            THE COURT:  All right.

10           MS. WILKINSON:  Just to clarify, Your Honor, they

11  didn't do the work.  So I don't know this part is separate from

12  the --

13           THE COURT:  I don't know.  See, this is why I can't

14  rule on --

15           MS. WILKINSON:  Understood.

16           THE COURT:  I don't know.  You can file whatever you

17  want whenever you want, however long you want.  Just file one

18  at a time.  And they will respond quickly because they have an

19  army of lawyers --

20                      (Laughter)

21           THE COURT:  -- over there, because I have seen it on

22  the docket as well.

23      But thanks for raising that all.  I will keep that in

24  mind.  Again, it is just a bench, not a jury, so we have a

25  little but more flexibility.
```

1          **MS. FLEURY:**  Thank you, Your Honor.

2                    (Pause in proceedings.)

3          **MR. WEINGARTEN:**  James Weingarten, again, Your Honor.

4     I don't believe we have any other issues.

5          **THE COURT:**  Okay.  So why don't you tell me, though --

6     so we are going to do 20 minutes each for openings.  Hopefully

7     starting at 8:30.  But you will be here at 8:15 so we can try

8     to work out any confidentiality issues.

9          And then who do we expect to see by video or in person

10    tomorrow?

11         **MR. WEINGARTEN:**  FTC is calling two witnesses

12    tomorrow.  We expect to see Mr. Matt Booty.  We expect to see

13    Mr. Pete Hines.  And then Ms. Bond for the Defense is coming

14    out of order, they are going to call.

15         **THE COURT:**  All right.  Okay.  And then going forward,

16    though, you will give me the list and the exhibits in advance

17    and the other side as well.

18         **MS. WILKINSON:**  To clarify, Your Honor, those are all

19    three Microsoft employees, so we will also be giving you a

20    notebook with the documents that we would use once

21    Mr. Weingarten and his team has done their examination.

22         **THE COURT:**  Okay.  All right.  Okay.  I will see you

23    all tomorrow then.

24                    (Proceedings adjourned at 2:34 p.m.)

25

1

2

3                    **CERTIFICATE OF REPORTER**

4          I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:    Wednesday, June 21, 2023

8

9

10

11    _____

12          Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
         United States District Court - Official Reporter
13

14

15

16

17

18

19

20

21

22

23

24

25